# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

|  |  |
|---|---|
| EDWARD LITTLE, on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COMMISSIONER THOMAS FREDERICK, in his judicial capacity as Commissioner of the 15th Judicial District of Louisiana; CHIEF JUDGE KRISTIAN EARLES, in his official capacity as Chief Judge of the 15th Judicial District of Louisiana; and SHERIFF MARK GARBER, in his official capacity as Sheriff of Lafayette Parish, Louisiana, <br><br> Defendants. | Case No. 6:17-cv-724 <br> (Class Action) |

## CLASS ACTION COMPLAINT

### Introduction

Many people are in the Lafayette Parish jail because they cannot deposit enough money to purchase their liberty. Defendants employ a post-arrest wealth-based detention scheme that jails impoverished people when they are unable to meet a secured financial condition of release determined without regard for their ability to pay. Edward Little is currently confined in a Lafayette Parish jail cell because, despite being otherwise eligible for release after being arrested and charged with theft, he cannot pay $375 to purchase his liberty.

In the 15th Judicial District Court of Louisiana ("15th JDC"), which covers Lafayette, Vermilion, and Acadia Parishes, most misdemeanor arrestees are immediately released only if they can pay a predetermined, secured money bail that is based on a schedule promulgated by Defendant Chief Judge Kristian Earles. Felony arrestees (and some misdemeanor arrestees) are immediately

released only if they can pay a sum of money set by Defendant Commissioner Thomas Frederick. Neither the initial schedule nor the orders imposed by Commissioner Frederick involve any inquiry into the arrestee's ability to pay or any consideration of non-financial alternatives.  Under the money bail schedule, everyone arrested for a given charge must pay the same amount in order to be released from jail; under Commissioner Frederick's orders, secured money bail amounts are set without any consideration of the arrestee's ability to pay them or of any non-financial alternatives.

Because Mr. Little is impoverished, Defendant Sheriff Mark Garber continues to confine him in the Lafayette Parish Correctional Center ("Jail").  If he could pay the amount of money required by Commissioner Frederick, Sheriff Garber would release him immediately.  He cannot produce that money, and so he will remain in jail.

On behalf of himself and all others similarly situated, the named Plaintiff seeks injunctive and declaratory relief against the Defendants.  Plaintiff seeks an order enjoining the Defendants from operating the wealth-based post-arrest detention policy, and a declaration that the Defendants violate the Fourteenth Amendment to the United States Constitution when they set secured financial conditions of release, without an inquiry into ability to pay or consideration of non-financial alternatives, that result in jailing the poor for no reason other than their poverty.

## Nature of the Action[1]

Commissioner Frederick and Chief Judge Earles require secured financial conditions of release for most arrestees in the 15th JDC.  The conditions necessarily result in release only for people with enough money to pay them; for everyone else, these conditions are effectively orders of pretrial detention.  Chief Judge Earles promulgated a money bail schedule that considers only

---

[1] Plaintiff makes the allegations in this Complaint based on personal knowledge as to matters in which he has personal involvement and on information and belief as to all other matters.

the crime with which the arrestee is charged, and Commissioner Frederick sets secured financial conditions of release without any inquiry into whether the arrestee can bear the financial burden those conditions impose. The Sheriff implements a policy of detaining people under the schedule and Commissioner Frederick's orders. The Defendants' actions violate the Fourteenth Amendment to the United States Constitution.

## Jurisdiction and Venue

1. This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, *et seq.*, and the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Venue in this Court is proper under 28 U.S.C. § 1391.

## Parties

3. Edward Little was arrested on June 3, 2017, on a charge of theft. Because he cannot afford to pay the amount of money set by Commissioner Frederick without regard to his ability to pay, Mr. Little is currently confined in jail by Sheriff Garber.

4. Defendant Commissioner Thomas Frederick is the Commissioner of the 15th JDC. He is appointed by a majority vote of the Judges of the 15th JDC. La. R.S. § 13:714. In all cases not covered by the bail schedule, Commissioner Frederick sets the initial secured financial conditions of release; he does this without considering the person's ability to pay or non-financial alternative conditions of release.

5. Defendant Kristian Earles is the Chief Judge of the 15th JDC. In his capacity as Chief Judge, he promulgated the money bail schedule. Ex. A; La. Code Crim. Proc. Ann. art. 315.

6. Defendant Sheriff Mark Garber is the Sheriff of Lafayette Parish, Louisiana. He has implemented a policy of adhering to the money bail schedule set by Chief Judge Earles and

the individual secured financial conditions of release set by Commissioner Frederick.  When someone is arrested in Lafayette Parish for an offense covered by the money bail schedule,[2] Sheriff Garber's employees, at his direction, consult the schedule and demand the amount of money listed on the schedule before they will release the arrestee.  For offenses not covered by the money bail schedule,[3] Sheriff Garber's employees, at his direction, demand the amount required by Commissioner Frederick.  Sheriff Garber jails all arrestees who are unable to pay for their release.

7. None of the Defendants inquire into, or make findings about, any arrestee's ability to pay money bail or her suitability for alternative non-financial conditions of release.

## Factual Background

**A.    Edward Little**

8. Edward Little lives on a farm in Carencro, Louisiana, with his wife, Heather, and their two children. The Littles make their living collecting old items, refurbishing them, and selling them on the internet.

9. Their income is highly unstable, but even when the business is going well they rarely have money leftover at the end of the month and often struggle to pay expenses like food, clothing, and utilities.

10. On June 3, 2017, Mr. and Mrs. Little were arrested. Mr. Little was charged with felony theft.

---

[2] The money bail schedule lists pre-set money bail amounts for simple battery, theft, criminal trespass, gambling, resisting arrest, and many other charges. For all charges classified as misdemeanors by the Louisiana Criminal Code and not listed on the schedule, "the bond will be set at $500" pursuant to the schedule.

[3] The money bail schedule reads "must be set" for charges such as illegal carrying of a weapon, aggravated assault, and terrorizing.  For these charges, Commissioner Frederick sets the initial secured money bail amount.

11. Mr. Little was brought to the Lafayette Parish Jail. A guard told him that his bond was set at $3,000.

12. Mr. Little's parents told him that he would be released if he could pay $375 to a for-profit bonding agent.

13. Neither Mr. Little nor his family can pay $375.

14. After selling things and scraping together what they could, Mr. Little and his family can pay only $250, and even then the payment would cause extreme hardship in meeting the basic necessities of life.

**B.    The Defendants' Policies and Practices**

15. Mr. Little is currently in the Lafayette Parish Jail. He would be released immediately if he or someone acting on his behalf paid the amount of money set by Commissioner Frederick.

*Arrest and Initial Financial Conditions*

16. Louisiana law defines "bail"[4] to include "(1) Bail with a commercial surety[;] (2) Bail with a secured personal surety[;] (3) Bail with an unsecured personal surety[;] (4) Bail without surety[; and] (5) Bail with a cash deposit." La. Code. Crim. Proc. Ann. art. 321. Secured money bail (i.e., "Bail with a cash deposit") requires that the arrestee deposit money in order to be released; unsecured money bail (i.e., "Bail without surety") requires only that the arrestee promise to pay money if she violates conditions of release. In the 15th JDC, initial conditions of release for misdemeanors and most felonies are usually financial and almost always secured, which means

---

[4] "[B]ail," as defined by history, law, and practice, "is a mechanism for pretrial release and not for continued pretrial preventive detention." *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414, 2017 WL 1735456, at *12 (S.D. Tex. Apr. 28, 2017).

.

that a person must, upon arrest, deposit money up front to be released. Commercial sureties generally demand that the arrestee deposit 12% of the total money bail amount.

17. Louisiana law explicitly permits detention of individuals found to be especially dangerous, regardless of the crimes with which those people are charged. La. Code Crim. Proc. Ann. art. 313. Those people may be detained only after "a contradictory hearing [and] . . . upon proof by clear and convincing evidence either that there is a substantial risk that the defendant might flee or that the defendant poses an imminent danger to any other person or the community." *Id.* Defendants do not conduct such hearings prior to issuing de facto orders of pretrial detention based on unaffordable amounts of money.

18. When someone is arrested in Lafayette Parish, she is brought to the Lafayette Parish Jail. The Sheriff is the chief officer of the jail and oversees the confining of all people within it.

19. The Lafayette Parish Jail has a reported maximum safe capacity of 954 people. On May 16, 2017, at 9:13 a.m. C.S.T, there were 1,073 people in the Lafayette Parish jail, 493 of whom were pre-trial detainees. On June 5, 2017, at 2:37 p.m. C.S.T, there were 1,099 people in the jail, 521 of whom were pre-trial detainees. According to the Sheriff's website, "at any point in time, [the jail] is at or near capacity."[5]

20. If someone is arrested on a warrant, and is charged with an offense that is covered by the money bail schedule, Sheriff Garber will release her only if she or her surety can pay the amount of money listed on the schedule. For charges not covered by the schedule, Commissioner Frederick sets an initial secured financial condition of release when he approves the warrant. In any of those cases, the Sheriff will release the person only if she or her surety can pay the amount

---

[5] The Lafayette Parish Sheriff, *Corrections by the Numbers*, https://www.lafayettesheriff.com/site305.php (last accessed May 5, 2:31 p.m. C.S.T.).

set by Commissioner Frederick. The Sheriff never releases anyone who cannot deposit the amount set either by the money bail schedule or Commissioner Frederick.

21. If someone is arrested without a warrant, the arresting officer calls Commissioner Frederick and describes the facts leading to the arrest. Commissioner Frederick decides whether there was probable cause to support the arrest and issues his ruling over the phone. If the offense with which the arrestee is charged is not covered by the money bail schedule, Commissioner Frederick sets secured financial conditions of release over the phone. Sheriff Garber will release the arrestee only if she or her surety can pay the amount of money set by Commissioner Frederick. The Sheriff never releases anyone who cannot deposit the amount set either by the money bail schedule or Commissioner Frederick.

22. Commissioner Frederick sets these initial financial conditions of release without any inquiry into whether the arrestee can meet them, and with no consideration of alternative, non-financial conditions. When he imposes these conditions, Commissioner Frederick has not communicated with the arrestee and has no information about the arrestee's finances. Arrestees who cannot afford private lawyers are not represented by counsel at this stage. All arrestees at this point are presumed by law to be innocent, and most have not yet actually been charged with any crime by the prosecutor.

23. The Sheriff's Department collects and holds the deposited money bail sums.[6]

24. The Sheriff's Department never makes any inquiry into whether the person can pay the amount set by Commissioner Frederick or the money bail schedule.

---

[6] Pursuant to Louisiana law, the Sheriff deposits a percentage of every secured money bail into a fund controlled by the same judges who determine whether to require a secured money bond and, if so, what amount of money bond to require for release. The Sheriff deposits another portion of every money bond into an account used to fund the District Attorney's Office and into a separate account used to fund the Public Defender's Office.

*The Initial Appearance*

25.     Arrestees do not see a judicial officer until their initial appearance.  State law mandates that this appearance happen within 72 hours of arrest, excluding Saturdays, Sundays, and legal holidays.  La. Code Crim. Proc. Ann. art. 230.1(A).  These appearances are referred to as "72 hearings" or "72s."

26.     Commissioner Frederick presides over all 72 hearings, which he holds in Lafayette Parish on Tuesdays and Fridays.  Those are the only days on which 72 hearings are held in Lafayette.  Therefore, someone arrested immediately after the 72 hearing on a Friday will not see a judicial official for at least four days.

27.     Seventy-two hearings are conducted by video-link: Commissioner Frederick presides from the bench in the courthouse while the arrestee is in a room at the jail.

28.     Sheriff's Department employees are present in the jail at every 72 hearing.

29.     The Sheriff's Department assembles groups of about a dozen arrestees at a time and brings them into a small room in the jail for the 72 hearings.  The arrestees wear jail-issued jumpsuits.  They are called up to the camera one-by-one as Commissioner Frederick works through the docket.

30.     The 72 hearings last approximately 25 or 30 seconds.  Commissioner Frederick generally asks the arrestee if her name, address, and date of birth are correctly listed on her arrest paperwork; tells the arrestee what the charges against her are; tells the arrestee her conditions of release; and asks the arrestee if she can afford a lawyer.  If the arrestee cannot afford a lawyer, Commissioner Frederick formally appoints one, usually from the District Public Defender's Office.  A jail employee then gives the arrestee a sheet of paper with the Public Defender Office's contact information on it.

31. Although state law explicitly authorizes Commissioner Frederick to "review a prior determination of the amount of bail" at the 72 hearing, La. Code Crim. Proc. art. 230.1(B), his policy and practice is to refuse to address conditions of release at the hearing. He forbids the introduction of evidence and legal argument concerning release and detention. For example, when two recent arrestees told Commissioner Frederick that they could not afford their secured financial conditions of release, Commissioner Frederick told them to "read the sheet" and "take it up with your lawyer."

32. When another recent arrestee said that he could not afford secured financial conditions of release, and that he would be stuck in jail as a result, Commissioner Frederick said only "next." He then moved on to another arrestee's case.

33. Commissioner Frederick does not entertain arguments to reduce secured financial conditions of release, or to impose unsecured or non-financial conditions, at the 72 hearings.

34. Because they are present at all 72 hearings, Sheriff's Department employees know that Commissioner Frederick does not consider ability to pay at the 72 hearings.

35. Because Sheriff's Department employees regularly effect arrests in Lafayette Parish, they know that no inquiry into ability to pay is made before the 72 hearing.

*Post Initial-Appearance Detention*

36. After the 72 hearing, an arrestee's only opportunity to modify her conditions of release is by filing a motion before a Judge of the 15th JDC. If the district attorney has not yet decided whether to prosecute the arrestee by formally charging her by bill of information or indictment—locally, this is referred to as "picking up" the charge—a bail-modification motion will be heard by the judge on duty. If charges have been instituted by the district attorney, the

9

defendant's case will be assigned to a Division of Court and only that Division's Judge can preside over the motion.

37. In either case, having a post-arrest release or money-bail reduction motion heard by a court can typically take a week or more. During that waiting period, the arrestee is confined in jail having had no opportunity to be heard concerning her ability to pay or alternative conditions of release.

38. People who cannot afford to pay predetermined amounts of money unrelated to their actual financial resources often spend months in jail awaiting the disposition of their cases. They are all presumed innocent.

39. Many of the 1,099 people detained pretrial in the Lafayette Parish Jail would be released immediately if they could deposit enough money.

## Class Action Allegations

40. The named Plaintiff brings this action, on behalf of himself and all others similarly situated, to assert the claims alleged in this Complaint on a common basis.

41. A class action is a superior means, and the only practicable means, by which the named Plaintiff and unknown Class members can challenge the Defendants' unlawful wealth-based post-arrest detention scheme.

42. This case can be maintained as a class action under to Federal Rules of Civil Procedure 23(a)(1)–(4) and 23(b)(2).

43. This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

44. The Plaintiff proposes one Class seeking declaratory and injunctive relief: All arrestees who are or will be detained by Defendants for any amount of time after arrest because

they are unable to pay secured money bail.

### A. Numerosity. Fed. R. Civ. P. 23(a)(1)

45. Every person arrested in the 15th JDC who is not lawfully preventatively detained is subjected to the Defendants' wealth-based detention scheme in which arrestees either pay for their liberty or, regardless of their ability to pay or personal circumstances, remain confined in a jail cell.

46. Some arrestees can pay for their release immediately. Assuming they are not otherwise detained for another matter, they will walk out of the jail upon payment. Others are forced to wait days or more until they or family members can seek out and somehow gather the required money, often resulting in increased hardship for arrestees and their families. These hardships include lost jobs, lost shelter, and lost custody of children. Many, however, are not able to pay or to find someone else to pay for their liberty. They must wait weeks or months until their cases are resolved for even the prospect of release.

47. Those kept in jail after arrest because they cannot pay the secured financial condition of release are more likely to be convicted, more likely to be sentenced to longer periods of incarceration, and more likely to be charged with a crime in the future. Research and experience in other jurisdictions demonstrates that release using unsecured bond or non-financial conditions of release is more effective at increasing rates of court appearance and preventing new crimes.

48. There are hundreds of people subject to these policies at any given time. Sherriff's Department records show that on June 5, 2017, 521 people were detained in the Lafayette Parish Jail pretrial. Almost none of them are detained under the procedures provided for in Louisiana's preventive detention statute; most of them are in jail on money-based de facto orders of pretrial detention entered without following any of the procedures required for a valid order of detention

and would be released immediately if they were not impoverished.

**B. Commonality. Fed. R. Civ. P. 23(a)(2).**

49. The relief sought is common to all members of the Class, and common questions of law and fact exist as to all members of the Class. The named Plaintiff seeks relief concerning whether the Defendants' policies, practices, and procedures violate the rights of the Class members and relief mandating the Defendants to change their policies, practices, and procedures so that the constitutional rights of the Class members will be protected in the future.

50. These common legal and factual questions arise from one central scheme and set of policies and practices: the Defendants' wealth-based post-arrest detention process. The Defendants operate this scheme openly and in materially the same manner every day. The material components of the scheme do not vary from Class member to Class member, and the resolution of these legal and factual issues will determine whether the members of the class are entitled to the constitutional relief that they seek.

51. Among the most important common questions of fact are:

- Whether Defendants have a policy and practice of determining the amount of money necessary to secure post-arrest release without inquiry into ability to pay;
- Whether Defendants implement their post-arrest detention scheme without consideration of ability to pay, without findings as to ability to pay, and without consideration of alternative, non-financial conditions;
- Whether Defendants require that pre-determined amounts of money be paid upfront before they will release a person from jail;
- How long arrestees must wait in jail after the 72-hearing before being able to raise their inability to pay for their release or non-financial alternative conditions.

52. Among the most important common question of law are:

- Whether the Defendants' wealth-based post-arrest detention scheme, which requires that arrestees pay money upfront to be released and which does not consider ability to pay or alternative non-financial conditions of release, violates the Fourteenth Amendment's Due Process and Equal Protection clauses.

### C. Typicality. Fed. R. Civ. P. 23(a)(3).

53. The named Plaintiff's claims are typical of the claims of the other members of the Class, and the named Plaintiff has the same interests in this case as all other members of the Class. Each of them suffers the same injury because Defendants refuse to comply with basic constitutional requirements: the named Plaintiff and all of the Class members are confined in jail because they could not afford to pay the Defendants' secured financial condition of release. The answer to whether the Defendants' policies and practices are unconstitutional will determine the claims of the named Plaintiff and every other Class member.

### D. Adequacy. Fed. R. Civ. P. 23(a)(4).

54. The named Plaintiff is an adequate representative of the Class because his interests in the vindication of the legal claims that he raises are entirely aligned with the interests of the other Class members. The named Plaintiff is a member of the Class, and his interests coincide with, and are not antagonistic to, those of the other Class members.

55. There are no known conflicts of interest among members of the proposed Class, all of whom have a similar interest in vindicating their constitutional rights.

56. Plaintiff is represented by attorney William P. Quigley[7] and attorneys from Civil Rights Corps[8] and the Roderick and Solange MacArthur Justice Center in New Orleans

---

[7] William Quigley has practiced law in Louisiana for nearly forty years, during which time he has litigated numerous class action civil rights cases in federal court. He holds the positions of Professor of Law and Director of the Stuart H. Smith Law Clinic and Center for Social Justice and the Gillis Long Poverty Law Center at Loyola University New Orleans College of Law.

[8] Civil Rights Corps is a non-profit civil rights organization based in Washington, D.C. Lawyers with Civil Rights Corps have been counsel in nearly 20 federal civil rights class action lawsuits concerning various forms of court debt-collection, wealth-based jailing, and post-arrest detention schemes. These cases have resulted in class-wide preliminary injunction rulings and jurisdiction-wide consent decrees.

("MacArthur Justice Center"),[9] who have experience in litigating complex civil rights matters in federal court and knowledge of both the details of the Defendants' scheme and the relevant constitutional and statutory law.

57. The efforts of Class counsel have so far included investigation of Defendants' money-based pretrial detention system, interviews of jail inmates and attorneys practicing in the area, consultation with local and national experts, and research regarding the legality of Defendants' secured money-bail regime.

58. Class counsel have studied the way that post-arrest detention systems function in other cities and counties in order to investigate the wide array of lawful options in practice for municipal entities.

59. Class counsel also have experience litigating similar challenges in other jurisdictions and years of experience litigating complex and important cases in Louisiana federal courts.

60. As a result, counsel have undertaken significant efforts toward becoming intimately familiar with the Defendants' scheme and with all of the relevant state and federal laws and procedures than can and should govern it. The interests of the members of the Class will be fairly and adequately protected by the named Plaintiff and his attorneys.

E.   **Rule 23(b)(2)**

61. Class action status is appropriate because the Defendants, through the policies,

---

[9] The MacArthur Justice Center is a non-profit public interest law firm. Undersigned counsel Katie Schwartzmann, the co-Director of the MacArthur Justice Center, has practiced law in Louisiana for thirteen years and has litigated a wide variety of complex civil matters in state and federal court. Undersigned counsel Eric Foley, staff attorney at the MacArthur Justice Center, worked for two years as a federal judicial clerk in the District Court of Puerto Rico before beginning his practice of law in Louisiana in 2011. He has litigated civil rights cases at the trial and appellate stages in state court, and in the trial stage in federal court.

practices, and procedures that make up their post-arrest detention scheme, have acted in the same unconstitutional manner with respect to all class members. Defendants have created and applied a simple scheme of wealth-based post-arrest detention and release: Defendants release those who can pay and detain those who cannot.

62. The Class therefore seeks declaratory and injunctive relief to enjoin the Defendants from continuing in the future to detain impoverished arrestees who cannot afford money payments. Because the putative Class challenges the Defendants' scheme as unconstitutional through declaratory and injunctive relief that would apply perforce to every member of the Class, Rule 23(b)(2) certification is appropriate and necessary.

## Claims for Relief

### Count One:  Defendants Violate Plaintiff's Rights by Jailing Plaintiff Because He Cannot Afford a Monetary Payment.

63. Plaintiff incorporates by reference the allegations in paragraphs 1–62.

64. The Fourteenth Amendment's Due Process and Equal Protection clauses have long prohibited jailing a person because of her inability to make a monetary payment. Defendants violate Plaintiff's fundamental right to pretrial liberty by placing and keeping him in jail because he cannot afford to pay the monetary bail amount set without inquiry into and findings concerning ability to pay or non-financial alternative conditions.

## Request for Relief

WHEREFORE, Plaintiff and the other Class members request that this Court issue the following relief:

a. An order and judgment preliminarily and permanently enjoining the Defendants from using money bail to detain any person without procedures that ensure an inquiry into and findings concerning the person's ability to pay any monetary amount set and without an inquiry into and findings concerning non-financial alternative conditions of release;
b. A declaratory judgment that the Defendants violate Plaintiff's constitutional rights by setting secured financial conditions of release without inquiring into or making findings as

      to whether arrestees can pay the amounts set, and without considering non-financial alternative conditions of release;
c. An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and
d. Any other relief this Court deems just and proper.

Respectfully submitted,

*/s/ Katie Schwartzmann*
Katie M. Schwartzmann, La. Bar No. 30295
Eric A. Foley, La. Bar No. 34199
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
katie.schwartzmann@macarthurjustice.org
eric.foley@macarthurjustice.org

*/s/ William P. Quigley*
William P. Quigley, La. Bar No. 07769
7214 Saint Charles Ave
Campus Box 902
New Orleans, LA 70118-3538
Phone: (504) 861-5590
Fax: (504) 861-5440
quigley77@gmail.com

*/s/ Charles Gerstein*
Charles Gerstein D.C. Bar No. 1033346 (*pro hac vice* application forthcoming)
Premal Dharia, D.C. Bar No. 484091 (*pro hac vice* application forthcoming)
Civil Rights Corps
910 17th Street NW, Suite 500
Washington, DC 20001
charlie@civilrightscorps.org
premal@civilrightscorps.org
(202) 670-4809
*Attorneys for Plaintiff*

16