UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

EDWARD LITTLE                    CIVIL ACTION NO. 6:17-cv-00724

VERSUS                           JUDGE FOOTE

THOMAS FREDERICK, ET AL.         MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Currently pending before this Court is the motion of defendants Judge Kristian Earles and Commissioner Thomas Frederick seeking to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. (Rec. Doc. 26). The motion is opposed. (Rec. Doc. 48). Oral argument was held on October 19, 2017. For the following reasons, the undersigned recommends that the motion be granted in part and denied in part.

### FACTUAL BACKGROUND

On June 5, 2017, the plaintiff Edward Little filed a class action complaint that alleges, on behalf of himself and all others similarly situated, that Commissioner Thomas Frederick, Chief Judge Kristian Earles, and Sheriff Mark Garber maintain an unconstitutional scheme where impoverished people are detained when they are unable to meet a secured financial condition of release that is determined without

1

regard to their ability to pay.[1] Two days prior, on June 3, 2017, the plaintiff was arrested and charged with **felony** theft and was detained at the Lafayette Parish Correctional Center. The plaintiff's bail was set at $3,000 and he alleges that he did not have the ability to pay a bond agent $375 to secure his release.

According to the complaint, the 15th Judicial District Court ("15th JDC") utilizes a money bail schedule that is promulgated by Judge Earles and implemented through established procedures where an arrestee's bail is set without consideration of his inability to pay a certain monetary bail amount. The plaintiff alleges that the manner in which an arrestee's bail is set depends on the charged offense and the circumstances of the arrest. Generally, an arrestee's bail will initially be set based on Judge Earles's bail schedule. However, when an arrestee is arrested pursuant to a warrant for an offense that is not covered by the bail schedule, bail is set by Commissioner Frederick when he signs the arrest warrant which would be supported by a probable cause affidavit. When a person is arrested without a warrant and the offense is not covered by the bail schedule, bail is set by Commissioner Frederick during a telephone call after he determines whether there is probable cause to support the arrest.

---

[1]     The Fifteenth Judicial District is made up of three parishes:  Lafayette, Vermilion, and Acadia. Based on the allegations, this suit appears to apply only to the procedures and personnel in Lafayette Parish.

The plaintiff alleges that if an arrestee is not released, he appears before Commissioner Frederick for his initial appearance, which is commonly referred to as a 72-hour hearing.  The 72-hour hearings are conducted by video-link and are held on Tuesdays and Fridays. During the 72-hour hearing, Commissioner Frederick will ask the arrestee whether his name, address, and date of birth are correctly listed on the arrest paperwork, advise the arrestee of the charges against him, the conditions of release, and he will appoint counsel if the arrestee is found to be indigent.  According to the complaint, after the 72-hour hearing, an arrestee can only modify his bail amount by filing a motion to seek a bail reduction, which must be heard by either the assigned district judge if he has been formally charged by the district attorney or the district judge on duty if he has not been formally charged by the district attorney.

During oral argument, the Policy of the Fifteenth Judicial District Court ("15th JDC Policy") regarding bail bonds was introduced as an exhibit and the parties agreed that the Court could consider the policy in the context of the present motion.[2] According to the 15th JDC Policy, all arrestees charged with a **misdemeanor** will be released on a summons without the requirement of posting bond if they are charged with a traffic offense or one of the other thirty-eight misdemeanors that are listed in the policy. However, the 15th JDC Policy provides that an arrestee charged with

---

[2]    Rec. Docs. 56, 57 pp.14-15.

domestic abuse battery will not be released on a summons because it is prohibited by statute, and an arrestee charged with driving under the influence will be released if the arrestee meets the qualifications for the Sheriff Offender Tracking Program ("STOP").  Further, "non-summons misdemeanors may also qualify for release on the signature (personal surety) of a qualified friend or family member who can establish residential stability and employment."[3]

The 15th JDC Policy further provides that the bonds for an arrestee charged with a **felony** "will be set *initially* based on the facts set forth in the probable cause for arrest affidavit, including the arrestee's age, local vs. no local address, the circumstances of the offense, and the information on the arrestee's rap sheet including prior warrants for failure to appear."[4]  Bonds are set two to three times each day via phone or email. However, if the arrestee does not bond out, is charged with a non-violent felony, and qualifies for STOP, he can be released without paying the set bail amount. If an arrestee meets the STOP requirements, the arrestee will be released pursuant to a court order that conditions his release upon satisfactory participation in the program. A felony arrestee may also be released on a signature (personal surety) bond. If an arrestee has not been released, then "an arrestee will be provided an

---

[3]     Rec. Doc. 56-1, p. 2.

[4]     *Id.* (Emphasis added).

4

individualized bail determination within 24 hours of arrest, if practical, but in no event later than the next available 72-hour hearing after arrest." [5]

Indigent defendants are assigned counsel at the 72-hour hearing. Thereafter, if bond has not been reduced, counsel may put the individual on a weekly bond reduction duty docket where counsel for both parties will try to reach an agreement on a reduced bond amount. If no agreement can be reached, the case will be placed on the bond reduction docket of the judge assigned to the case who will hold a bond reduction hearing with evidence and argument.[6]

The plaintiff argues that the 15th JDC Policy is unconstitutional because the defendants set monetary bail as a condition of release without consideration of an arrestee's ability to pay a certain monetary amount. The plaintiff further argues that Commissioner Frederick's implementation of the 15th JDC Policy is unconstitutional because he has a policy and practice where he refuses to reconsider prior determinations of bail during an arrestee's 72-hour hearing. In the plaintiff's complaint, it is alleged that two recent arrestees informed Commissioner Frederick that they could not afford their bail amount during their 72-hour hearings, but Commissioner Frederick refused to address the issue and told them to "read the sheet"

---

[5]    Rec. Doc. 56-1, p. 3.

[6]    Rec. Doc. 56-1, p. 3.

5

and "take it up with your lawyer." Therefore, the plaintiff alleges that the defendants'

bail procedure is a violation of his fundamental right to pretrial liberty because his

detention is based solely on his inability to pay his set bail amount and the defendants

do not inquire into his ability to pay or non-financial alternative conditions until a

motion to reduce bail is filed.

The plaintiff seeks the following relief on behalf of himself and all others

similarly situated:  (1) an injunction to enjoin the defendants from using money bail

to detain any person without procedures that ensure an inquiry into findings

concerning the person's ability to pay any monetary amount set and without an

inquiry into and findings concerning non-financial alternative conditions of release;

(2) a declaratory judgment that the defendants violate the plaintiff's rights by setting

secured financial conditions of release without inquiring into or making findings as

to whether arrestees can pay the amounts set and without considering non-financial

alternative conditions of release; and (3) an order and judgment granting reasonable

attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## LAW AND ANALYSIS

The defendants styled their motion as a Rule 12(b)(1) motion to dismiss based

on the lack of subject matter jurisdiction. However, their briefs contain arguments

that are not related to subject matter jurisdiction. The defendants contend that the

plaintiff's allegations do not set forth a constitutional violation because an arrestee does not have a constitutional right:  (1) to be free from detention and post bail if he is a flight risk or danger to the community; or (2) to instant release from pretrial detention. Based on the defendants' arguments that address the merits of the case, this Court construes the defendants' 12(b)(1) motion to dismiss for lack of subject matter jurisdiction as a 12(b)(6) motion to dismiss for failure to state a claim.[7]

## I.    The Applicable Standard

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[8]  The allegations must be sufficient "to raise a right to relief above the speculative level,"[9] and the pleading must contain more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.[10]  "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

---

[7]    The Court notes that counsel for the movants adopted arguments made in the motion to dismiss filed by Sheriff Garber. (See Rec. Doc. 18). Particularly as they apply to standing/mootness and applicability of the *Younger* abstention, those arguments are addressed in the report and recommendation issued by this Court in response to Sheriff Garber's motion and are adopted herein as well.

[8]    *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).

[9]    *Bell Atlantic v. Twombly,* 550 U.S. at 555.

[10]    *Id.*, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004).

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[11]  If the plaintiff fails to allege facts sufficient to "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[12]

When considering a Rule 12(b)(6) motion, a district court is generally required to limit itself to the contents of the pleadings, including any attachments thereto.[13] The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff.[14]  Conclusory allegations and unwarranted deductions of fact are not accepted as true,[15] and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[16]

---

[11]     *Id.* (citations, quotation marks, and brackets omitted; emphasis added).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12]     *Bell Atlantic v. Twombly*, 550 U.S. at 570.

[13]     *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[14]     *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

[15]     *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[16]     *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## II.   CONVERSION OF THE MOTION TO DISMISS TO A MOTION FOR SUMMARY JUDGMENT IS NOT WARRANTED

When considering a Rule 12(b)(6) motion, a court has complete discretion to consider documents other than the complaint[17] if those documents are attached to the motion, referenced in the complaint, and central to the plaintiff's claims.[18]  If a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment,[19] and the nonmovant must be afforded the procedural safeguards of Fed. R. Civ. P. 56.[20]  However, the parties' submission of extraneous materials does not automatically convert a Rule 12(b)(6) motion for summary judgment.[21]

Although not attached to the motion, since the 15th JDC Policy is at the very heart of the complaint and central to the plaintiff's claims, this Court finds that

---

[17]    *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 193 n. 3 (5th Cir. 1988); *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 414-15 (5th Cir. 1980).

[18]    *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins v. Morgan Stanley*, 224 F.3d at 498–99.

[19]    Fed. R. Civ. P. 12(d).

[20]    *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 (5th Cir. 1993); *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir. 1990).

[21]    *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015); *Davis v. Bayless*, 70 F.3d 367, 372 n. 3 (5th Cir. 1995).

9

consideration of the exhibit setting forth the policy in writing, which was agreed to by the parties, does not convert the motion to dismiss into one for summary judgment.

## III.   SECTION 1983 CLAIMS

Section 1983 provides a cause of action against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another person's Constitutional rights. Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere.[22] To state a section 1983 claim, a plaintiff must: (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[23]

In this case, the plaintiff asserts a claim under Section 1983, alleging that his fundamental right to pretrial liberty is being infringed in violation of the Fourteenth Amendment's Due Process Clause and Equal Protection Clause because the defendants set bail without consideration of the inability to pay a certain monetary

---

[22]    *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004).

[23]    *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013); *Moore v. Willis Independent School Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

amount such that arrestees remain in detention solely because they are unable to pay their set bail amount.

**(1)      The State Law Framework**

Title VIII of the Louisiana Code of Criminal Procedure governs the issue of bail. Article 313 specifically vests district courts and their commissioners having criminal jurisdiction to fix bail "in all cases." Article 315 specifically authorizes a bail schedule such as that employed by the 15th JDC in this case. That statute provides in pertinent part:

> A. Unless the bail is fixed by a schedule in accordance with this Article, the amount of bail shall be specifically fixed in each case. In noncapital felony cases, a bail schedule according to the offense charged may be fixed by the district court.
>
> .      .      .
>
> B. The court order setting the bail schedule shall fix the amount of bail for each offense listed, designate the officer or officers authorized to accept the bail, and order that bail be taken in conformity with the schedule.
>
> .      .      .
>
> C. A person charged with commission of an offense for which bail is fixed by a schedule may give bail according to the schedule or demand a special order fixing bail. The bail amount fixed by schedule may be modified by the court in accordance with Article 319.

As set forth in more detail below, one of the factors specifically identified by the Legislature to consider in fixing bail is "the ability of the defendant to give bail."[24]

---

[24]      La. C. Cr. Pro. Art. 316.

Article 319 allows the court, on its own motion or on the motion of either the prosecution or the defendant, to either increase or reduce the amount of bail. Finally, Article 313 provides for a contradictory bail hearing in certain instances prior to setting bail with temporary detention authorized for no more than five days exclusive of weekends and legal holidays.[25]

This Court finds that the 15th JDC Policy is in accord with these provisions of state law as a threshold matter and the plaintiff has made no allegation that the law of Louisiana is unconstitutional either on its face or as applied.

**(2)    Equal Protection**

To prevail under the Equal Protection Clause, a Section 1983 plaintiff must prove either: (1) a state actor intentionally discriminated against the plaintiff because of membership in a protected class; or (2) the plaintiff has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment.[26] The plaintiff does not allege that the defendants intentionally discriminate against an arrestee based on financial status. Instead, the plaintiff contends that the defendants "employ a post-arrest wealth-based detention scheme that jails impoverished people when they are unable to meet a secured

---

[25]    These five articles were revised from their prior form as part of Acts 2016, No. 613, § 1, eff. January 1, 2017.

[26]    *Gibson v. Texas Dep't of Ins.*, 700 F.3d 227, 238 (5th Cir. 2012).

12

financial condition of release determined without regard for their ability to pay."[27] However, even assuming that the plaintiff's allegations are true, the Equal Protection Clause would only require that the classification rationally further a legitimate state interest because classifications based on wealth or financial status are not protected classes.[28]

"Generally speaking, an individual's indigence does not make that individual a member of a suspect class for equal protection purposes."[29] In *Pugh v. Rainwater*, the Fifth Circuit recognized that "imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible."[30] However, the court held that there is no presumption that an indigent defendant shall be released without a monetary bail because the "ultimate inquiry in each instance is what is necessary to reasonably assure defendant's presence at trial."[31] This Court is not persuaded that *Pugh* establishes a protected class for indigent arrestees because an arrestee's ability

---

[27]    Rec. Doc. 1 p.1 ¶ 1

[28]    *Carson v. Johnson,* 112 F.3d 818, 821-822 (5th Cir. 1997) ("Neither prisoners nor indigents constitute a suspect class.").

[29]    *Driggers v. Cruz*, 740 F.3d 333, 337 (5th Cir. 2014) (citing *Maher v. Roe*, 432 U.S. 464, 471 (1977).

[30]    *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (en banc) (citing *Williams v. Illinois*, 399 U.S. 235 (1970)).

[31]    *Pugh v. Rainwater*, 572 F.2d at 1057-58.

to pay a bail amount is not the only consideration when bail is set. Therefore, the plaintiff will only prevail under the Equal Protection Clause if the defendants do not have a rational basis to intentionally treat the plaintiff differently from others similarly situated.

It is well settled that the defendants have "a compelling interest in assuring the presence at trial of persons charged with a crime."[32]  The 15th JDC Policy, on its face, does not discriminate against arrestees based on their financial status. First of all, the bail amount, if set under the schedule, is set in the same manner based on the nature of the offense charged regardless of financial status in compliance with Article 315. For individualized bail that is initially set within hours of a felony arrest, the defendants consider "the facts set forth in the probable cause for arrest affidavit, including arrestee's age, local vs. no local address, circumstances of the offense and the information on an arrestee's rap sheet including prior warrants for failure to appear."[33] While the financial condition of the arrestee is not specifically identified in this *initial individualized setting*, the information that is listed in the policy may well be the only information available to the defendants during this short time period and takes into consideration other factors listed under Article 316 in order to set a

---

[32]     *Pugh v. Rainwater,* 572 F.2d at 1056 (citing *Stack v. Boyle* , 342 U.S. 1, 4 (1951))

[33]     Rec. Doc. 56-1, p.2.

sufficient bail to assure the arrestee's presence at trial and the safety of any other person and the community.

However, pursuant to the 15th JDC Policy, an arrestee's initial bail amount is not final and will potentially be reviewed two additional times within seventy-two hours of arrest. If the defendant wishes to pursue the argument that the monetary bail is set too high, and the other factors under Article 316 justify reduction, then bail can be adjusted based on the applicable state law implemented through the 15th JDC Policy. If the arrestee still does not get relief, there are two more opportunities for bail review including a contradictory hearing by the district judge assigned to the case. Therefore, on its face, this procedure illustrates that the defendants do not intend to detain an arrestee longer than the time required to assure the arrestee's appearance at trial and the safety of any other person and the community. While the application of this procedure might lead to a conclusion where an arrestee with the ability to pay is released, while an arrestee with the inability to pay is detained, the defendants' procedure is rationally related to these two compelling interests.

The 15th JDC Policy also illustrates that the defendants do not have a discriminatory purpose toward indigents when bail is initially set because there are non-financial alternatives available if an arrestee is unable to pay the monetary bail amount. The 15th JDC Policy provides that an arrestee may be released without paying

a monetary bail if the requirements for the STOP program or the requirements to be released on a signature bond are met. These non-financial alternatives are available for consideration when the defendants review an arrestee's bail, but cannot be automatically applied for **all** felony arrestees that are unable to pay a monetary bail amount because that procedure would thwart the more compelling interests of assuring the arrestee's appearance at trial as well as ensuring the safety of any other person and the community.

With regard to misdemeanors, the 15th JDC Policy illustrates that the defendants provide more than what is constitutionally required because nearly all arrestees charged with a misdemeanor listed in the policy are released on a summons without any further considerations. Exceptions are for those who cannot be released on a summons as a matter of law, and those who have been arrested for the third time within the previous six months. In addition, non-summons misdemeanors may also qualify for release on the signature of a personal surety or release through the STOP program. There is no indication in the 15th JDC Policy that indigent defendants charged with a misdemeanor are held solely because they cannot afford to meet the financial conditions of their bond.

This Court finds that the 15th JDC Policy does not violate the Fourteenth Amendment's Equal Protection Clause. Therefore, this Court recommends that the

plaintiff's Section 1983 claim based on the alleged violation of the Fourteenth Amendment's Equal Protection clause should be dismissed.

**(3)    Due Process Clause**

The Due Process Clause of the Fourteenth Amendment has two components: (1) "A guarantee of procedural protections when a state seeks to deprive an individual of protected liberty or property interests, and (2) a substantive protection against conduct that 'shocks the conscience.'"[34] The first component, which establishes procedural due process, requires the plaintiff to "identify a protected life, liberty, or property interest and then prove that government action resulted in a deprivation of that interest."[35] Stated differently in the context of this case, the two-part analysis of the procedural due process component requires identification of the protected liberty interest, and then a determination of whether the state has provided adequate procedures for the vindication of that interest.[36] "The liberty interests protected by the Fourteenth Amendment may arise from "the Constitution itself, by reason of

---

[34]    *Jordan v. Fisher*, 823 F.3d 805, 810 (5th Cir. 2016).

[35]    *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001).

[36]    *Jordan v. Fisher*, 823 F.3d at 810 (citing *Wilkinson v. Austin*, 545 U.S. 209, 213 (2005)).

guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies."[37]

"The second component of the due process analysis does not rest on state law . . . and comes into play . . . when 'the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience' regardless of whether the behavior in question fails to conform to state laws."[38] The second component dealing with substantive due process is not at issue in this lawsuit.

The plaintiff contends that the defendants violate an arrestee's fundamental right to pretrial liberty by placing and keeping an arrestee in jail simply because he cannot afford to pay the monetary bail amount. However, it is unclear whether the plaintiff is asserting that an arrestee's right to pretrial liberty is a protected interest created by the Constitution or state law. Therefore, the threshold issue before the Court is whether the right to pretrial release is a liberty interest that is created by the Constitution or a liberty interest created by a state law or policy.

In *Pugh*, the Fifth Circuit essentially denied that the right to pretrial liberty is a fundamental right because the right is conditioned on "what is necessary to

---

[37]    *Id.* (quoting *Wilkinson v. Austin*, 545 U.S. at 221).

[38]    *Id.* (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 862 n.8 (1996)).

reasonably assure the defendant's presence at trial."[39] In *U.S. v. Salerno*, the Supreme Court recognized the importance and fundamental nature of the right to pretrial release, but ultimately held that the right to pretrial release is not a fundamental right.[40] Based on the applicable jurisprudence, this Court is not persuaded that the right to pretrial release is a fundamental right created by the Constitution. However, the right to pretrial liberty is a protected interest created by Louisiana law.

State law can create federal liberty interests "by placing substantive limitations on official discretion," typically through "establishing substantive predicates to govern official decision-making" and by "mandating the outcome to be reached upon a finding that the relevant criteria have been met."[41] The Louisiana Constitution provides "before and during a trial, a person **shall be bailable by sufficient surety**, except when he is charged with a capital offense and the proof is evident and the presumption of guilt is great."[42] The right to bail is also provided under Article 312

---

[39]    *Pugh v. Rainwater*, 572 F.2d at 1057.

[40]    *United States v. Salerno*, 481 U.S. 739, 750-51 (1987) (citing *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934)).

[41]    *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 462 (1989).

[42]    La. Const. Art. 1, § 18 (emphasis added). The article further states: "a person charged with a crime of violence as defined by law or with production, manufacture, distribution, or dispensing or possession with intent to produce, manufacture, distribute, or dispense a controlled dangerous substance as defined by the Louisiana Controlled Dangerous Substance Law, and the proof is evident and the presumption of guilt is great, shall not be bailable if, after a contradictory hearing, the judge or magistrate finds by clear and convincing evidence that there is a substantial risk

of the Louisiana Code of Criminal Procedure, which states that, "except as provided in this article and article 313, a person in custody who is charged with the commission of an offense is entitled to bail before conviction."[43]

Louisiana's right to bail provision places limitations on an official's discretion because it provides that an arrestee is entitled to bail unless the arrestee is charged with a certain offense and/or specific procedures are followed. However, an arrestee's right to bail remains conditional on the arrestee's ability to provide "sufficient surety" and the court setting an arrestee's bail maintains its discretion to determine what is considered "sufficient surety" in each case. Therefore, Louisiana law creates a federal liberty interest that arrestees have the right to be released from pretrial detention, but this interest remains conditioned on an arrestee's ability to provide "sufficient surety."

To determine whether a liberty interest is sufficiently protected under the Due Process Clause, the Fifth Circuit applies the balancing test that was established in *Mathews v. Eldridge*, which requires consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such an interest through the procedures used, and the probable value, if any, of

---

that the person may flee or poses an imminent danger to any other person or the community."

[43]     La. C. Cr. Pro. Art. 312.

additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[44]

In this case, the private interest that is affected by the defendants' alleged conduct is an arrestee's interest in release from custody prior to trial. However, an arrestee's interest is not automatically erroneously deprived when a monetary bail amount is set because not only is the interest conditional, but the procedures used mandate that the ability to pay the bail amount is already one factor to consider.

The Louisiana legislature specifically provided that "[t]he amount of bail **shall** be fixed in an amount that will ensure the presence of the defendant, as required, and the safety of any other person and the community, having regard to" ten factors.[45] While a felony arrestee's ability to pay bail is a factor to consider (see factor 4), it cannot be the sole factor used to determine the appropriate conditions of release. For example, when an arrestee with a prior criminal record is charged with a violent

---

[44]    *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

[45]    La. C. Cr. Pro. Art. 316 (emphasis added). These factors include: (1) the seriousness of the offense charged, including but not limited to whether the offense is a crime of violence or involves a controlled dangerous substance; (2) the weight of the evidence against the defendant; (3) the previous criminal record of the defendant; (4) the ability of the defendant to give bail; (5) the nature and seriousness of the danger to any other person or the community that would be posed by the defendant's release; (6) the defendant's voluntary participation in a pretrial drug testing program; (7) the absence or presence in the defendant of any controlled dangerous substance; (8) whether the defendant is currently out on a bail undertaking on a previous felony arrest for which he is awaiting institution of prosecution, arraignment, trial, or sentencing; (9) any other circumstances affecting the probability of defendant's appearance; (10) the type or form of bail.

offense, backed by evidence of sufficient weight (factors 1, 2 & 3), the main consideration before the court is whether the arrestee will be a danger to any other person or the community if released (factor 5). When an arrestee has failed to appear on numerous occasions, the main consideration before the court is whether the arrestee will appear for trial (factor 9). In these situations, an arrestee's ability to pay a certain bail amount, while a factor to be considered, is not necessarily in and of itself dispositive of the issue before the court when weighed against the compelling interests of assuring the safety of any other person and the community and the arrestee's appearance as required.

However, even if the initial setting results in a bail amount that is too high for the arrestee to meet, the procedural safeguards that are in place in the 15th JDC Policy allow the arrestee multiple opportunities to have the bond reduced (potentially two times within seventy-two hours), and non-financial alternatives are available if an arrestee is unable to pay a monetary bail amount. After the 72-hour hearing, if an arrestee remains in custody, there are two more remedies available:  being placed on the *weekly* bond reduction duty docket with a duty judge, and if no agreement can be reached with the prosecution, by being placed on the bond reduction docket with an evidentiary hearing before the judge assigned to the case.

While there is no applicable jurisprudence to address the appropriate time period for bail to be set, there is jurisprudence that establishes a time period to determine probable cause. In *Gerstein v. Pugh*, the Supreme Court held that a judicial officer shall make a prompt determination of whether there is probable cause to support an arrest and the determination can be made informally without an adversarial hearing.[46] The Supreme Court recognized that the determination of probable cause should be flexible and incorporated into the procedure for setting bail or fixing other conditions of pretrial release.[47]

In *County of Riverside v. McLaughlin*, the Supreme Court addressed the appropriate time period to satisfy the promptness requirement of *Gerstein* and held that the judicial determination of probable cause shall be made within 48 hours of an arrest.[48] The Supreme Court also restated that certain proceedings, including bail hearings, may be combined with the informal procedure of determining probable cause.[49]

---

[46]    *Gerstein v. Pugh*, 420 U.S. 103, 123 (1974).

[47]    *Gerstein v. Pugh*, 420 U.S. at 104.

[48]    *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

[49]    *Id.,* at 58.

The 15th JDC policy illustrates that the defendants follow the intended structure set forth in *County of Riverside* and *Gerstein*, because an arrestee's *individualized* bail may be initially set at the same time that a judicial officer determines whether there is probable cause for the arrest, whether by warrant or not, i.e. within hours of the actual arrest. There is no constitutional requirement that the plaintiff is entitled to an adversarial hearing at that time.

Louisiana law mandates that an arrestee shall be brought before a judge within seventy-two hours of arrest for the purpose of appointment of counsel and "if the defendant has the right to have the court appoint counsel to defend him, the court shall assign counsel to the defendant. The court may also, *in its discretion*, determine or review a prior determination of the amount of bail."[50]    Thus, Louisiana law does not *mandate* that an arrestee is entitled to an adversarial hearing to challenge the bail amount during the 72-hour hearing.

However, the 15th JDC Policy *does* mandate that an *individualized* bail determination is to be made "within twenty-four hours of arrest, if practical, but in no event later than the next available seventy-two (72) hour hearing after arrest."[51] Louisiana law does not specifically require that an adversarial hearing occur at an

---

[50]    La. C. Cr. Pro.  Art. 230.1 (emphasis added).

[51]    Rec. Doc. 56-1, p. 3.

arrestee's 72-hour hearing, nor does it mandate that a prior determination of bail be reviewed. However, due process does require some justification at some point that an arrestee's right to pretrial release based on a sufficient surety is not being violated. The 15th JDC Policy provides the opportunity for that justification if amount of bail is questioned by the arrestee. This 72-hour time period is closely tailored to the appropriate time period for setting conditions of release established in the federal Bail Reform Act.[52]

Under Fed. R. Cr. P. 5(a), an arrestee's initial appearance before a magistrate judge shall occur without "unnecessary delay." A specific time period for what constitutes an unnecessary delay is not defined and is determined on a case-by-case basis. However, if an arrestee is arrested *without* a warrant, a 48-hour delay between arrest and a probable cause determination has been considered reasonable by the Supreme Court.[53] If an arrestee is arrested pursuant to a warrant based on a complaint, which must be supported by a probable cause affidavit, the arrestee is entitled to a preliminary hearing with evidence and witnesses presented to the court to determine the existence of probable cause within no later than fourteen days if he is

---

[52]    18 U.S.C.A. § 3141 *et seq.*

[53]    *County of Riverside v. McLaughlin,* 500 U.S. at 57.

incarcerated.[54] It is not uncommon for preliminary hearings to be combined with detention hearings during this time frame.

Under the Bail Reform Act, a federal court is allowed to detain an arrestee pending trial if the court finds after an adversary hearing that no release conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community."[55] The adversarial hearing "shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance."[56] Except for good cause, the continuance is limited to no more than five working days if sought by the defendant or three working days if sought by the Government.[57] The continuance is a matter of right and the computation of time does not include legal holidays or weekends. Thus, under the federal system, a defendant charged with a felony could possibly be held without any type of bond consideration for more than five days if the defendant is presented to the magistrate judge within 48 hours of arrest and the Government seeks a continuance.

---

[54]    Fed. R .Cr. P. 5.1(c). An arrestee is not entitled to a preliminary hearing if he is indicted by the Grand Jury.

[55]    18 U.S.C.A. § 3142(e).

[56]    18 U.S.C.A. §3142(f)

[57]    *Id.*

Therefore, in the context of setting bail, under the 15th JDC Policy, bail can be set based on the offense charged, i.e. under the schedule, when probable cause is determined, and individualized bail is set within 24 hours of arrest but in no event no later than the next available 72 - hour hearing. In the federal system, bond conditions can also possibly be set within twenty-four hours of arrest, but on the motion of the Government, bond may not be determined until up to three days, i.e seventy-two hours, later excluding weekends or holidays.

The plaintiff argues that all arrestees are entitled to the same due process procedures established by the Supreme Court in *United States v. Salerno*. In *Salerno*, the Supreme Court reviewed the Bail Reform Act's authorization of pretrial detention and held that the procedures required are sufficient to satisfy procedural due process requirements. The requirements include: (1) a detention hearing where the arrestee is represented by counsel; (2) the arrestee may testify on their own behalf, present information, and cross-examine witnesses; (3) the judicial officer that determines the appropriateness of detention is guided by enumerated factors, which include the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community; (4) the government must prove its case by clear and convincing evidence; and (5) the judicial

officer must include written findings of fact and a written statement of reasons for a decision to detain.[58]

The 72-hour hearing under state law does not contemplate the same procedures for setting conditions of bond as a detention hearing under the Bail Reform Act. However, the 15th JDC Policy provides two additional opportunities to have bail addressed, up to and including an evidentiary hearing with the district judge assigned to the case. Therefore, this Court concludes that the bail procedures employed under Louisiana law, as implemented by the 15th JDC Policy, do meet the procedural safeguards required to satisfy the plaintiff's due process rights.

The plaintiff's argument in this case follows the holding in *Odonnell v. Harris County* where the plaintiff alleged that Harris County maintains a "systematic custom of setting secured financial conditions of release on the bail schedule without any inquiry into or findings concerning an arrestee's present ability to pay the amount set."[59]   The Court recognized that under Texas law an arrestee charged with a **misdemeanor** should not be detained over 24 hours **solely based** on their inability to pay. The court used federal case law to conclude that arrestees charged with a

---

[58]    *U.S. v. Salerno*, 481 U.S. 739, 751-752 (1987).

[59]    *Odonnell v. Harris County*, 227 F.Supp.3d. 706, 718 (S.D. Tex. 2017). This case is on appeal to the Fifth Circuit and as of this writing has not been decided.

misdemeanor can only be detained based on their inability to pay a monetary bail amount after the following is provided: "(1) notice that the financial and other resource information its officers collect is for the purpose of determining the misdemeanor arrestee's eligibility for release or detention; (2) a hearing at which the arrestee has an opportunity to be heard and to present evidence; (3) an impartial decisionmaker; and (4) a written statement by the factfinder as to the evidence relied on to find that a secured financial condition is the only reasonable way to assure the arrestee's appearance at hearings and law abiding behavior before trial."[60]

Similarly, in *Wheat v. Craig*, the plaintiffs filed a class action complaint and alleged that indigent **misdemeanor** arrestees in Bossier Parish are detained up to forty-five days **solely** because they are unable to pay their monetary bail amount.[61] The parties reached a settlement, which included that: (1) all misdemeanor arrestees except those expressly listed will be released on their own recognizance; (2) misdemeanor arrestees charged with an offense that is not listed will be provided an individualized bail determination within twenty-four hours of arrest whenever practicable but in no event later than seventy-two hours after their arrest; (3) these bail review hearings meet the requirements of due process and equal protection, and

---

[60]    *Odonnell v. Harris County,* 251 F.Supp.3d at 1145.

[61]    *Wheat v. Craig*, 5:17-cv-00424, Rec. Doc. 1

no misdemeanor arrestee will be kept in jail on the basis of a secured money bond that they cannot afford.[62]

After reviewing these similar cases, this Court recognizes that the 15th JDC Policy essentially mirrors the constitutional standards that are illustrated in these cases for arrestees charged with **misdemeanor** offenses. An arrestee charged with a misdemeanor is released without bail when the charged offense is an offense listed in the policy and release without a monetary bail is not otherwise prohibited by law. Furthermore, the 15th JDC policy provides non-financial alternatives when a monetary bail is set in a misdemeanor case and the arrestee is unable to pay the monetary bail amount, i.e. a personal surety or by qualifying for STOP. Finally, it is presumed a misdemeanor arrestee who is otherwise required to post bail and doesn't qualify for the non-financial alternatives (whether due to voluntariness on the arrestee's part or not) would have the same procedures available to address bail as a felony arrestee in any other case, i.e. individualized bail determination within 24 hours of arrest if practicable, but in no event no later than the next 72-hour hearing.

However, there is one major factor that distinguishes these cases from the present case. Because the plaintiff in this case is charged with a **felony**, far more compelling interests are at stake. Nonetheless, this Court agrees with the 15th JDC

---

[62]     *Wheat v. Craig*, 5:17-cv-00424, Rec. Doc. 27

Policy that an arrestee's *individualized* bail amount should be reviewed or addressed no later than their initial appearance before a judicial officer. However, the plaintiff alleges that Commissioner Frederick has a policy and practice where he refuses to address an arrestee's bail amount during the 72-hour hearing. The plaintiff further alleges that two recent arrestees told Commissioner Frederick that they could not afford to pay their monetary bail amount and Commissioner Frederick told them to "read the sheet" and "take it up with your lawyer."[63] This allegation suggests "the sheet" is the bail schedule rather than an individualized bail determination. Even though the plaintiff did not appear before Commissioner Frederick when this lawsuit was filed, these allegations, accepted as true, present a plausible claim regarding whether Commissioner Frederick's actions are a violation of an arrestee's due process rights.

This Court finds that the 15th JDC Policy, on its face, does not create a violation of an arrestee's due process rights because the policy follows appropriate procedures and provides that an arrestee shall have an individualized bail determination within 24 hours if practical, but in no event not later than the next available 72-hour hearing following his or her arrest. The policy further provides that arrestees can challenge their bail condition two more times, including at a contradictory hearing before the

---

[63]    Rec. Doc. 1 P. 9 ¶31

31

district judge assigned to the case if they are still unable to secure their release after the 72-hour hearing. While the plaintiff alleges that the hearing before a district judge may occur a week or more after an arrest, this time period is not unconstitutional if Commissioner Frederick makes an individualized bail determination no later than the 72-hour hearing and provides a record as to why the bail conditions are justified under Article 316 as a sufficient surety to assure their presence at trial and the safety of any other person and the community.

Whether Commissioner Frederick's alleged refusal to address an arrestee's conditions of bail during a 72-hour hearing is a violation of an arrestee's due process rights is a question that must be resolved with evidence. However, since the 15th JDC Policy does contain sufficient procedural safeguards, this Court recommends that the plaintiff's due process claims against Judge Earles should be dismissed.

## CONCLUSION

Based on the foregoing reasons, it is recommended that the defendants' motion to dismiss (Rec. Doc. 26) should be granted in part and denied in part. The defendants' motion should be granted to the extent it seeks dismissal of all of the plaintiff's equal protection claims as well as the plaintiff's due process claims against Judge Earles. The defendants' motion should be denied to the extent that it seeks dismissal of the plaintiff's due process claims against Commissioner Frederick.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 6th day of December 2017.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE