UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

EDWARD LITTLE                          CIVIL ACTION NO. 6:17-cv-00724

VERSUS                                 JUDGE FOOTE

THOMAS FREDERICK, ET AL.               MAGISTRATE JUDGE HANNA

## REPORT  AND  RECOMMENDATION

Currently pending before this Court is defendant Sheriff Mark Garber's motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. (Rec. Doc. 18). The motion is opposed. (Rec. Doc. 48). Oral argument was held on October 19, 2017. For the following reasons, the undersigned recommends that the motion be granted in part and denied in part.

### FACTUAL BACKGROUND

On June 5, 2017, plaintiff Edward Little filed a class action complaint that alleges, on behalf of himself and all others similarly situated, that Commissioner Thomas Frederick, Chief Judge Kristian Earles, and Sheriff Mark Garber maintain an unconstitutional scheme by which impoverished people are detained when they are unable to meet a secured financial condition of release that is determined without

1

regard to their ability to pay.[1] Two days prior, on June 3, 2017, the plaintiff was arrested, charged with felony theft, and detained at the Lafayette Parish Correctional Center. The plaintiff's bail was set at $3,000, and he alleges that he did not have the ability to pay a bond agent $375 to secure his release.

According to the complaint, the 15th Judicial District Court ("15th JDC") utilizes a money bail schedule that is promulgated by Judge Earles and implemented through established procedures where an arrestee's bail is set without consideration of the inability to pay a certain monetary bail amount. The plaintiff alleges the manner in which an arrestee's bail is set depends on the charged offense and the circumstances of the arrest. Generally, an arrestee's bail will initially be set based on Judge Earles's bail schedule. However, when a person is arrested pursuant to a warrant for an offense that is not covered by the bail schedule, bail is set by Commissioner Frederick when he signs the arrest warrant, which would be supported by a probable cause affidavit. When a person is arrested without a warrant and the offense is not covered by the bail schedule, bail is set by Commissioner Frederick during a telephone call after he determines whether there is probable cause to support the arrest.

---

[1] The Fifteenth Judicial District is made up of three parishes: Lafayette, Vermilion, and Acadia. Sheriff Garber is the Sheriff of Lafayette Parish.

The plaintiff alleges that Sheriff Garber implements a policy at LPCC where an arrestee is only released when his monetary bail amount is paid. As part of the policy, Sheriff Garber's employees demand either the monetary amount required for the offense pursuant to the bail schedule or the monetary amount that is set by Commissioner Frederick as a condition of release.  The plaintiff alleges that Sheriff Garber's employees do not consider an arrestee's inability to pay a certain monetary bail amount.

If an arrestee has not been released from LPCC, the arrestee will appear before Commissioner Frederick for an initial appearance, which is commonly referred to as a 72-hour hearing. During the 72-hour hearing, Commissioner Frederick will ask the arrestee whether the name, address, and date of birth are correctly listed on the arrest paperwork, advise the arrestee of the charges against him and his conditions of release, and appoint counsel if the arrestee is found to be indigent. The plaintiff alleges that Sheriff Garber's employees are present and aware that an arrestee's inability to pay a certain bail amount will not be considered during the 72-hour hearing.

According to the complaint, after the 72-hour hearing, an arrestee can only modify his bail amount by filing a motion to seek a bail reduction, which must be heard by either the assigned judge if the arrestee has been formally charged by the

3

district attorney, or by the judge on duty if the arrestee has not been formally charged by the district attorney. Therefore, the plaintiff alleges that Sheriff Garber detains arrestees solely because they are unable to pay for their release.

Based on these allegations, the plaintiff contends that the bail procedure is a violation of his fundamental right to pretrial liberty because his detention is based solely on his inability to pay his set bail amount and the defendants do not inquire into his ability to pay or non-financial alternative conditions until a motion to reduce bail is filed. As a result, the plaintiff seeks the following relief on behalf of himself and all others similarly situated: (1) an injunction to enjoin the defendants from using money bail to detain any person without procedures that ensure an inquiry into and findings concerning the person's ability to pay any monetary amount set and non-financial alternative conditions of release; (2) a declaratory judgment that the defendants violate the plaintiff's rights by setting secured financial conditions of release without inquiring into or making findings as to whether arrestees can pay the amounts set and without considering non-financial alternative conditions of release; and (3) an order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

Sheriff Garber contends that the plaintiff's complaint should be dismissed pursuant to Rule 12(b)(1) because: (1) the plaintiff's claims are moot because he was

4

subsequently released from jail after he paid his original bail amount; and (2) the Court should apply the *Younger* abstention doctrine and refrain from exercising jurisdiction. In the alternative, Sheriff Garber contends that the plaintiff's claims against him should be dismissed pursuant to Rule 12(b)(6) because: (1) a sheriff does not have authority under Louisiana law to set an arrestee's bail; and (2) a sheriff does not have the authority to alter an arrestee's bail or release an arrestee contrary to the terms of a court order.

## LAW AND ANALYSIS

### I.    THE STANDARD FOR ANALYZING A RULE 12(b)(1) MOTION TO DISMISS

A motion filed under Fed. R. Civ. P. 12(b)(1) challenges the court's subject matter jurisdiction.[2] "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[3] This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice.[4]

"[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of

---

[2]    *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[3]    *Id.*

[4]    *Id.*

5

his claim that would entitle plaintiff to relief."[5] In evaluating a Rule 12(b)(1) motion, the court may examine "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[6] In response to a Rule 12(b)(1) motion, the party asserting jurisdiction has the burden of proving that jurisdiction is proper.[7] Accordingly, the plaintiff bears the burden of proof that jurisdiction does in fact exist.

### a.    Mootness

Article III of the Constitution limits the jurisdiction of the judiciary to "cases" or "controversies."  In order to have standing to assert federal jurisdiction, a plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."[8] Mootness is "the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence

---

[5]    *Id.,* at 161.

[6]    *Id.*

[7]    *Id.*

[8]    *Center for Biological Diversity v. BP America Production Co.*, 704 F.3d 413, 424 (5th Cir. 2013) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

(mootness)."[9] "Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot."[10]

The Supreme Court has established an exception to the mootness doctrine for class action lawsuits. In *Sosna v. Iowa*, the court held that claims asserted in a class action are not considered moot when the class representative's claim becomes moot after class certification.[11] However, the Court also recognized that, depending on the circumstances, there may be cases where this exception also applies when a named plaintiff's claim becomes moot before a district court can reasonably be expected to rule on a certification motion.[12] The *Sosna* exception has been interpreted to apply to controversies so transitory that no single named plaintiff can maintain a justifiable claim long enough to reach the class certification stage of the litigation.[13] When the *Sosna* exception applies, a plaintiff will meet the standing requirement under the relation back doctrine if the plaintiff had standing when the suit was filed.[14]

---

[9]      *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (citing *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397 (1980)).

[10]     *Id.*

[11]     *Sosna v. Iowa*, 419 U.S. 393 (1975).

[12]     *Id.,* at 402, n.11.

[13]     *Zeidman v. J. Ray McDermott*, 651 F.2d 1030, 1050 (5th Cir. 1981). See also, *Gerstein v. Pugh*, 420 U.S. 103, 110, n. 11 (1975).

[14]     *Sosna,* 419 U.S. at 402, n. 11.

In *Gerstein v. Pugh*, the court addressed whether the *Sosna* exception applied to a class action filed by prisoners challenging the constitutionality of their pretrial detention. The Court recognized that "pretrial detention is by nature temporary and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. . . It is by no means certain that any given individual, named as a plaintiff, would be in pretrial custody long enough for a district judge to certify the class."[15] Therefore, the court concluded that suitable circumstances existed to apply the *Sosna* exception so that the claims asserted by the named plaintiffs were not moot even though a class action was not certified at the time their status as pretrial detainees ended.

Sheriff Garber acknowledges the *Sosna* exception, but argues that it should not apply because: (1) the plaintiff was released from jail five days after this lawsuit was filed when he posted his bail at the amount that was originally set; and (2) his own actions kept him in jail when he decided to pay the $400 filing fee to file this lawsuit instead of paying $375 to a bail agent to be released.

The plaintiff was not released from jail until after he filed the complaint in this suit and a motion to certify a class action. Even though the court has not ruled on the plaintiff's pending class certification motion, the nature of pretrial detention,

---

[15]        *Gerstein v. Pugh,* 420 U.S. at 110, n. 11.

especially in this case where bail was set, is intended to be short term. The plaintiff cannot be expected to maintain his status in jail until this litigation is complete. This case presents the "suitable circumstances" where the "relation back" doctrine should be applied. Furthermore, the factual determination of whether the plaintiff had the ability to pay his monetary bail amount when this suit was filed is an issue directed at the merits of his claim and not an issue of standing. Therefore, this Court finds that the claims asserted in this lawsuit are not moot.

### b.    The *Younger* Abstention Doctrine

In *Younger v. Harris*, the Supreme Court established that federal courts must refrain from considering requests for injunctive relief based on constitutional challenges to ongoing state criminal proceedings.[16] The *Younger* abstention doctrine requires that federal courts decline to exercise jurisdiction over a state criminal defendant's claims when three conditions are met: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges."[17]

---

[16]    *Texas Ass'n of Business v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004) (citing *Younger v. Harris*, 401 U.S. 37, 91 (1971)).

[17]    *Bice v. Louisiana Public Defender Bd*. 677 F.3d 712, 717 (5th Cir. 2012).

9

In *Gerstein v. Pugh*, the Supreme Court also addressed whether the *Younger* abstention doctrine applies.  The court held that *Younger* abstention did not apply because the injunction that the plaintiffs sought "was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of their criminal prosecutions. The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits."[18]

The plaintiff challenges whether his pretrial detention is a violation of his constitutional rights when the basis for his continued detention is his inability to pay his monetary bail amount and he does not have an adequate opportunity to challenge the amount of bail until a motion to reduce bail is filed and heard. Based on these allegations, the plaintiff seeks an injunction to enjoin the defendants from using monetary bail to detain an arrestee without a procedure that inquires into an arrestee's ability to pay. The plaintiff's allegations, like those in *Gerstein*, do not present an issue directed at the merits of his criminal prosecution in state court. Instead, the plaintiff is challenging whether his pretrial detention is a violation of his constitutional rights. Therefore, the *Younger* abstention does not apply to this case.

---

[18]        *Gerstein v. Pugh,* 420 U.S. at 108, n.9.

10

Furthermore, even if the holding in *Gerstein* is not controlling over this case, the third requirement for the application of the *Younger* abstention is not met. Specifically, the plaintiff does not have an adequate opportunity to raise his constitutional challenges in state court. "The operation of the *Younger* doctrine is dependent upon the ability of the state court to provide an adequate remedy for the violation of federal rights."[19]

The defendants contend that the plaintiff has an adequate state court remedy because he can file a motion to reduce bail. However, the plaintiff does not allege that he is unable to file a motion to reduce his bail amount. Rather, he asserts that the time period it takes for the defendants to consider his ability to pay a certain monetary bail amount is a violation of his constitutional rights because he remains detained solely due to his inability to pay the bail amount. Even though the plaintiff can file a motion to reduce bail to challenge the bail set by the defendants, a ruling on the motion to reduce bail would not address the constitutional challenges that the plaintiff asserts in this lawsuit. Accordingly, *Younger* abstention does not apply to this case.

---

[19]    *Bice v. Louisiana Public Defender Bd.* 677 F.3d at 718 (citing *DeSpain v. Johnson*, 731 F.2d 1171, 1178 (5th Cir. 1984)).

Finding that the claims are not moot and that *Younger* abstention is not applicable, this Court recommends that the motion to dismiss under Rule 12(b)(1) be denied.

## 2.    THE STANDARD FOR ANALYZING A RULE 12(B)(6) MOTION TO DISMISS

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[20] The allegations must be sufficient "to raise a right to relief above the speculative level,"[21] and the pleading must contain more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.[22] "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[23] If the plaintiff fails to allege facts sufficient to "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[24]

---

[20]    *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).

[21]    *Bell Atlantic v. Twombly,* 550 U.S. at 555.

[22]    *Id.*, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004).

[23]    *Id.* (citations, quotation marks, and brackets omitted; emphasis added).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[24]    *Bell Atlantic v. Twombly*, 550 U.S. at 570.

When considering a Rule 12(b)(6) motion, a district court is generally required to limit itself to the contents of the pleadings, including any attachments thereto.[25] The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff.[26] Conclusory allegations and unwarranted deductions of fact are not accepted as true,[27] and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[28]

When considering a Rule 12(b)(6) motion, a court has complete discretion to consider documents other than the complaint[29] if those documents are attached to the motion, referenced in the complaint, and central to the plaintiff's claims.[30] If a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment,[31] and the nonmovant must be afforded the

---

[25]     *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[26]     *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

[27]     *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[28]     *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[29]     *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 193 n. 3 (5th Cir. 1988); *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 414-15 (5th Cir. 1980).

[30]     *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins v. Morgan Stanley*, 224 F.3d at 498–99.

[31]     Fed. R. Civ. P. 12(d).

procedural safeguards of Fed. R. Civ. P. 56.[32] However, the parties' submission of extraneous materials does not automatically convert a Rule 12(b)(6) motion for summary judgment.[33]

During oral argument, the policy of the Fifteenth Judicial District Court regarding bail bonds ("15th JDC Policy") was introduced as an exhibit, and the parties agreed that the court could consider the policy in the context of the present motion.[34] Since the 15th JDC Policy is central to the plaintiff's claims, this Court finds that consideration of the exhibit setting forth the policy in writing, which was agreed to by the parties, does not convert the motion to dismiss into one for summary judgment.

According to the 15th JDC Policy, all arrestees charged with a misdemeanor will be released on a summons without the requirement of posting bond if they are charged with a traffic offense or one of the other thirty-eight misdemeanors that are listed in the policy. However, the 15th JDC Policy provides that an arrestee charged with domestic abuse battery will not be released on a summons because it is prohibited by statute, and an arrestee charged with driving under the influence will

---

[32]    *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 (5th Cir. 1993); *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir. 1990).

[33]    *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015); *Davis v. Bayless*, 70 F.3d 367, 372, n. 3 (5th Cir. 1995).

[34]    Rec. Docs. 56, 57 pp.14-15.

14

be released if the arrestee meets the qualifications for the Sheriff Offender Tracking Program ("STOP"). Further, "non-summons misdemeanors may also qualify for release on the signature (personal surety) of a qualified friend or family member who can establish residential stability and employment."[35]

The 15th JDC Policy further states that the bond for an arrestee charged with a felony "will be set *initially* based on the facts set forth in the probable cause for arrest affidavit, including the arrestee's age, local vs. no local address, the circumstances of the offense, and the information on the arrestee's rap sheet including prior warrants for failure to appear."[36] Bonds are set two to three times each day via phone or email. However, if the arrestee does not bond out, is charged with a non-violent felony, and qualifies for STOP, he can be released without paying the set bail amount. If an arrestee meets the STOP requirements, the arrestee will be released pursuant to a court order that conditions his release upon satisfactory participation in the program. A felony arrestee may also be released on a signature (personal surety) bond. If an arrestee has not been released, then "an arrestee will be provided an individualized

---

[35]    Rec. Doc. 56-1, p. 2.

[36]    *Id.* (Emphasis added).

15

bail determination within 24 hours of arrest, if practical, but in no event later than the next available 72-hour hearing after arrest."[37]

Indigent defendants are assigned counsel at the 72-hour hearing. Thereafter, if bond has not been reduced, counsel may put the individual on a weekly bond reduction duty docket, during which counsel for both parties will try to reach an agreement on a reduced bond amount. If no agreement can be reached, the case will be placed on the bond reduction docket of the judge assigned to the case who will hold a bond reduction hearing with evidence and argument.[38]

## III.    SECTION 1983 CLAIM AGAINST SHERIFF GARBER

In *Monell v. Department of Social Services*, the United States Supreme Court held that municipalities are not vicariously liable for constitutional violations committed by their employees, but they are liable when their official policies cause their employees to violate another person's constitutional rights.[39] The Sheriff contends that the plaintiff's complaint fails to state a claim against him because he does not have the authority to set or reduce bail, which is the moving force for the plaintiff's alleged constitutional violation. In opposition, the plaintiff asserts that

---

[37]    Rec. Doc. 56-1, p. 3.

[38]    Rec. Doc. 56-1, p. 3.

[39]    *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692 (1978). See, also, *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012).

Sheriff Garber is a proper party regardless of his authority to set or reduce bail because: (1) Sheriff Garber is a state actor to whom *Monell* does not apply when he enforces judicial orders that he has no authority to modify or decline, and he is subject to prospective relief in that capacity; or (2) Sheriff Garber can be enjoined under *Monell* because he knowingly enforces invalid orders of detention and has some discretion under state law to decline to enforce them.

In the plaintiff's complaint, Sheriff Garber is named only in his official capacity as the sheriff of Lafayette Parish. A Section 1983 claim against a Louisiana sheriff in his official capacity or against a Sheriff's Office "is 'in essence' a suit against a municipality."[40] Accordingly, the plaintiff's claims against Sheriff Garber are claims against the Lafayette Parish Sheriff's Office and claims against a municipality.[41] Although the plaintiff argues that *Monell* does not apply when the sheriff enforces a judicial order over which he has no discretion, there is no claim in the plaintiff's complaint separate and apart from the claim against the sheriff in his

---

[40]    *Brown v. Strain*, 663 F.3d 245, 251 (5th Cir. 2011) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)); *Williams v. Gusman*, No. 15-64, 2015 WL 4509762, at *2 (E.D. La. July 24, 2015).

[41]    A similar issue was addressed in *Cain v. City of New Orleans*, 2016 WL 2849498 (E.D. La. 2016), where the court held that a Louisiana sheriff was a municipal actor and subject to *Monell's* standard of liability.

17

official capacity and, therefore, as a municipality. Thus, *Monell* applies to the plaintiff's claims.

"To establish municipal liability under 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[42] An official policy is (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government entity or by an official to whom the entity has delegated policy-making authority, or (2) a persistent, widespread practice of officials or employees which although not authorized by officially adopted and promulgated policy is so common and well settled as to constitute a custom that fairly represents the entity's policy.[43] If the plaintiff shows that the policy was promulgated by the municipality's policymaker, then the plaintiff must establish that the policy was the moving force behind the violation which "means there must be a direct causal link between the policy and the violation."[44]

Title VIII of the Louisiana Code of Criminal Procedure governs the issue of bail. In the context of this case, Article 313 specifically vests only district courts and

---

[42]       *Trammell v. Fruge*, 868 F.3d 332, 344 (5th Cir. 2017).

[43]       *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002).

[44]       *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009).

their commissioners having criminal jurisdiction to fix bail "in all cases." The law does not authorize a sheriff to fix bail in any case at all. Secondly, Article 315 specifically authorizes a bail schedule such as that employed by the 15th JDC in this case. Paragraph B of that article states, in pertinent part:

> The court order setting the bail schedule shall fix the amount of bail for each offense listed, designate the officer or officers authorized to accept the bail, and order that bail be taken in conformity with the schedule . . . . A copy of the schedule shall be sent to all jails, sheriff's offices, and police stations within the judicial district, parish, or city.

If the schedule is the manner in which bail is set for a particular arrestee, or if bail is set on an individualized basis as set forth in the 15th JDC Policy, the sheriff is obliged to follow that court order under Article 328, which states the following, in pertinent part:

> A. The bail undertaking shall:
> (1) Be in writing;
> (2) State the court before which the defendant is bound to appear.
> (3) Be entered into before an officer who is authorized to take it.
> (4) State a single amount of bail for each charge.
> B. The bail undertaking **shall be enforceable** if the above requirements are met . . .[45]

Given these statements of the law, the plaintiff's allegations do not establish that Sheriff Garber's policy is the moving force for the alleged constitutional violations. The plaintiff does not allege that Sheriff Garber has the authority to

---

[45]      See also La. C. Cr. Pro. 314 (B).

release an arrestee when his bail obligations are not satisfied. Nor does the plaintiff allege that Sheriff Garber has the authority to set or modify bail. Under Louisiana law, a sheriff is the keeper of the jail in his parish and shall "preserve the peace and apprehend public offenders."[46] Sheriff Garber, as the keeper of the jail, enforces the monetary bail amounts that are set by court orders. Under state law, Sheriff Garber has no authority to modify or decline to enforce court orders as the plaintiff would have this Court authorize. Therefore, Sheriff Garber's policy is not the moving force for the plaintiff's alleged constitutional violations.

This Court finds that the plaintiff has failed to state a claim against Sheriff Garber and recommends that the plaintiff's claims against Sheriff Garber be dismissed.

## CONCLUSION

Based on the foregoing reasons, it is recommended that Sheriff Garber's motion to dismiss (Rec. Doc. 18) should be granted in part and denied in part. The motion should be denied to the extent that Sheriff Garber seeks dismissal pursuant to Rule 12(b)(1). The motion should granted to the extent that Sheriff Garber seeks dismissal pursuant to Rule 12(b)(6).

---

[46] La. R.S. 13:5539.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglas v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 11th day of December 2017.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE