# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **EDWARD LITTLE** | **CIVIL ACTION NO. 6:17-CV-00724** |
| **VERSUS** | **JUDGE FOOTE** |
| **THOMAS FREDERICK, ET AL.** | **MAGISTRATE JUDGE HANNA** |

## MEMORANDUM RULING

Pending before the Court is Defendants', Judge Kristian Earles ("Judge Earles") and Commissioner Thomas Frederick ("Commissioner Frederick") (collectively, "Defendants"), Motion to Dismiss [Record Document 26], which seeks complete dismissal of Plaintiff's action against them.[1] The Magistrate Judge held oral argument on the motion and issued a Report and Recommendation [Record Document 58], which recommends that Plaintiff's equal protection claim be dismissed and that Plaintiff's due process claim be dismissed as to Judge Earles. The Report and Recommendation is **ADOPTED IN PART** and **REJECTED IN PART**. The Court adopts the Report and Recommendation only to the extent that it recommends that Defendants' motion be denied as to Plaintiff's due process claim against Commissioner Frederick. For the reasons announced below, this Court finds that Defendant's motion should be **DENIED** in its entirety.

---

[1]The Sheriff of Lafayette Parish, Mark Garber, is also a defendant in this suit. He has filed his own Motion to Dismiss [Record Document 18], which is the subject of a separate Report and Recommendation [Record Document 59].

## BACKGROUND

In his complaint, Plaintiff alleges that the 15th Judicial District Court of Louisiana ("15th JDC"), which covers Lafayette, Vermilion, and Acadia Parishes, utilizes a bail system that fails to consider an individual's financial condition or ability to pay a bail amount. The 15th JDC utilizes a money bail schedule created by Judge Earles that considers only the crime with which the arrestee is charged. Generally, when an individual is arrested with a warrant for an offense covered in the schedule, the Sheriff will release him only if he can pay the amount of money required by the schedule. When an arrestee is arrested on a warrant for an offense not covered by the schedule, bail is set by Commissioner Frederick when he approves the warrant. Record Document 1, p. 6. When a person is arrested without a warrant for an offense not covered by the schedule, bail is set by Commissioner Frederick during a telephone call after he determines whether there is probable cause to support the arrest. Commissioner Frederick makes the bail determination without any inquiry into the arrestee's financial condition and with no consideration of alternative non-financial conditions of release.

Plaintiff alleges that if an arrestee is not released, he appears before Commissioner Frederick for his initial appearance, which is commonly referred to as a 72-hour hearing. These hearings are conducted by video-link between the courthouse and the jail and are held on Tuesdays and Fridays. At the hearing, an arrestee will be called to stand in front of a camera and address Commissioner Frederick. Commissioner Frederick will ask the arrestee to confirm that his name, address, and date of birth are correctly listed on the

arrest paperwork, advise the arrestee of the charges against him, inform the arrestee of his conditions of release, and appoint an attorney if the arrestee cannot afford one. According to the complaint, although state law allows Commissioner Frederick to review a prior bail determination at the 72-hour hearing, it is his policy and practice to refuse to address conditions of release at the hearing. Instead, when arrestees attempt to explain that they cannot afford their secured financial conditions of release, they are told to "read the sheet," "take it up with your lawyer," or are simply ignored altogether. Record Document 1, p. 9. If an arrestee wishes to modify his conditions of release, he must file a motion seeking bail reduction. This motion will be heard either by the assigned district judge if the arrestee has been formally charged by the district attorney, or by the judge on duty if the arrestee has not been formally charged. Id. at 9-10. In either case, having the motion heard by the court "can typically take a week or more." Id. at 10. During that waiting period, the arrestee remains confined.

During oral argument, the Policy of the Fifteenth Judicial District Court Regarding Bail Bonds ("15th JDC Policy") [Record Document 56-1] was introduced as an exhibit and the parties agreed that the policy could be considered in ruling on the motions to dismiss. Record Document 57, pp. 14-15. Defendants represented that the policy was not new, but had previously been the policy of the 15th JDC; it was simply put into writing. Id. at 14. Plaintiff's position was that the 15th JDC Policy does nothing to resolve the constitutional claims because the policy document reflects the same concerns alleged in his Complaint, at least with regard to setting of bail for persons arrested for felonies.

The 15th JDC Policy states that, with few exceptions, all arrestees charged with a misdemeanor will be released on a summons without posting bond if charged with a traffic offense or one of the other thirty-eight listed misdemeanors. For the misdemeanors not listed, bond is set in the same manner as for felony arrests. The policy further provides that felony bonds are "set initially based on facts set forth in the probable cause for arrest affidavit, including [the] arrestee's age, local vs no local address, circumstances of the offense and the information on an arrestee's rap sheet including prior warrants for failure to appear." Record Document 56-1, p. 2. Bonds are set two to three times each day via phone or email. If the arrestee does not bond out and is charged with a non-violent offense, he may qualify for the Sheriff Offender Tracking Program ("STOP"). If an arrestee is released by court authority through STOP, his release is conditioned on satisfactory participation in the program. A felony arrestee may also be released on a signature bond (personal surety). If an arrestee is not released through one of these methods, he "will be provided an individualized bail determination within twenty-four (24) hours of arrest, if practical, but in no event later than the next available seventy-two (72) hour hearing after arrest."[2] After the 72-hour hearing, an arrestee's counsel "may put them on a weekly bond reduction duty docket" where counsel for the arrestee and the State will attempt to reach an agreement on a reduced bond amount. If no agreement is reached, "the arrestee may be placed on a bond reduction docket with the judge assigned to their case for the

---

[2]Plaintiff alleges that, as a practical matter, an individualized bail determination does not occur at the 72-hour hearing, and at no time prior to or at the 72-hour hearing is consideration given to an arrestee's ability to afford bail or non-financial alternative conditions of release.

presentation of evidence and argument." Id. at 3.

Plaintiff alleges that this system as implemented by the 15th JDC results in the jailing of individuals who are otherwise eligible for release for no other reason than their poverty. Accordingly, Plaintiff filed this suit seeking: (1) "[a]n order and judgment preliminarily and permanently enjoining the Defendants from using money bail to detain any person without procedures that ensure an inquiry into and findings concerning the person's ability to pay any monetary amount set and without an inquiry into and findings concerning non-financial alternative conditions of release"; (2) a "declaratory judgment that the Defendants violate Plaintiff's constitutional rights by setting secured financial conditions of release without inquiring into or making findings as to whether arrestees can pay the amounts set, and without considering non-financial alternative conditions of release"; and (3) an order granting attorneys' fees and costs pursuant to 42 U.S.C. § 1988. Record Document 1, pp. 15-16.

As noted in the Report and Recommendation, Defendants style their motion as a Rule 12(b)(1) motion to dismiss based on lack of subject matter jurisdiction, but the motion itself does not explain its grounds, and the memorandum in support contains arguments attacking the merits of Plaintiff's claims. Specifically, Defendants argue that there is no absolute right to bail and no constitutional right to speedy bail. Defendants further claim that bond schedules are not inherently unconstitutional. Accordingly, this Court agrees with the Report and Recommendation that Defendants' motion is more appropriately considered as one under Rule 12(b)(6) for failure to state a claim.

## **STANDARD**

In order to survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. See Twombly, 550 U.S. 544, 555 (2007); In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L. Ed. 2d 209 (1986).

## **LAW & ANALYSIS**

In order to successfully state a claim under 42 U.S.C. § 1983, a plaintiff must: "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013) (quoting James v. Tex. Collin Cty., 535 F.3d 365, 373 (5th Cir. 2008)). Here, Plaintiff alleges that Defendants infringe his fundamental right to pretrial liberty in violation of the Fourteenth Amendment due process and equal protection clauses by keeping him in jail because he cannot afford to pay a monetary bail amount set without inquiry into and findings concerning ability to

pay or non-financial alternative conditions. Record Document 1, p. 15.

    1. <u>ODonnell v. Harris County, Texas</u>

Since the filing of Defendants' motion and the Report and Recommendation of the Magistrate Judge, the Fifth Circuit decided the case of <u>ODonnell v. Harris Cty., Texas</u>, No. 17-20333, 2018 WL 851776 (5th Cir. Feb. 14, 2018), which, as the parties are certainly aware, dealt with similar issues. In <u>ODonnell</u>, ODonnell and other plaintiffs (collectively, "ODonnell") brought a class action under 42 U.S.C. § 1983 against Harris County, Texas, and a number of its officials (collectively, the "county"). ODonnell alleged the county's system for setting bail for indigent misdemeanor arrestees violated Texas statutory and constitutional law, as well as the equal protection and due process clauses of the Fourteenth Amendment. The district court entered a preliminary injunction against the county and its officials, and they, in turn, appealed. The Fifth Circuit affirmed a majority of the district court's rulings, including its conclusion that the county's bail system violates both equal protection and due process.

By law, in Harris County, when a misdemeanor defendant is arrested, the prosecutor submits a secured bail amount according to a bond schedule. Bonds are then formally set in the first instance by hearing officers, usually at an initial probable cause hearing within 24 hours. County judges then review the hearing officers' determinations and can adjust bail amounts at a "Next Business Day" hearing. <u>Id.</u> at *2. The <u>ODonnell</u> district court found that, in practice, the county's procedures did not achieve any individualized assessment in setting bail. Instead, the probable cause hearing was often not conducted within 24 hours,

sometimes lasted only seconds, and arrestees were not given an opportunity to submit evidence related to their ability to post bond. Overall, county officials imposed the scheduled bail amounts on a secured basis approximately ninety percent of the time. Similarly, the district court found that the "Next Business Day" hearing before the county judge failed to provide meaningful review of the hearing officer's bail determination. Arrestees were routinely required to wait days for their "Next Business Day" hearing, and bail was rarely adjusted. Id.

The district court found that the county's bail-setting procedures violated the equal protection clause because "they treat otherwise similarly-situated misdemeanor arrestees differently based solely on their relative wealth," and the Fifth Circuit agreed. Id. at *8. In doing so, the Fifth Circuit found that the county's customs and practices "resulted in detainment solely due to a person's indigency because the financial conditions for release are based on predetermined amounts beyond a person's ability to pay and without any 'meaningful consideration of other possible alternatives.'" Id. at *9 (citing Pugh v. Rainwater, 572 F.2d 1053, 1057 (5th Cir. 1978)). Applying intermediate scrutiny, the Fifth Circuit found no error in the district court's conclusion that the county's policy was not sufficiently tailored to meet its compelling interest in assuring a detainee's future appearance and lawful behavior.

As to the due process claim, the Fifth Circuit found a state-created interest in that Texas law "creates a right to bail that appropriately weighs the detainees' interest in pretrial release and the court's interest in securing the detainee's attendance." Id. at *6.

The court noted that "when the accused is indigent, setting a secured bail will, in most cases, have the same effect as a detention order. Accordingly, such decisions must reflect a careful weighing of the individualized factors set forth by both the state Code of Criminal Procedure and Local Rules." Id. It went on to agree that the county's procedures were inadequate, but modified the district court's findings regarding the specific procedures necessary to satisfy constitutional due process when setting bail. The district court previously found that due process required:

> (1) notice that the financial and other resource information Pretrial Services officers collect is for the purpose of determining a misdemeanor arrestee's eligibility for release or detention; (2) a hearing at which the arrestee has an opportunity to be heard and to present evidence; (3) an impartial decisionmaker; (4) a written statement by the factfinder as to the evidence relied on to find that a secured financial condition is the only reasonable way to assure the arrestee's appearance at hearings and law-abiding behavior before trial; and (5) timely proceedings within 24 hours of arrest.

Id. at *7. The Fifth Circuit made two alterations to these conclusions: (1) it rejected the requirement that a factfinder issue a written statement of reasons for imposing secured financial conditions of release and instead found that requiring the factfinder to specifically enunciate "individualized, case-specific reasons" is sufficient; and (2) it rejected the 24-hour requirement as too strict and instead found that federal due process entitles detainees to a hearing within 48 hours. Id. at *8. Nevertheless, the court affirmed that the county's procedures violate due process.

    2. Equal Protection

In this case, Plaintiff argues that the Defendants' bail-setting policies violate the equal protection clause because they act to detain arrestees based solely on indigence.

Plaintiff alleges that bail is set in the 15th JDC without consideration of an individual's ability to pay or non-financial alternative conditions of release and, as a result, two arrestees who have been arrested for the same conduct and who are identical in every way except for financial means would find themselves in two different situations: the arrestee with money would be free by virtue of his ability to pay the money bail, while the arrestee without would remain in jail. In ODonnell, the Fifth Circuit found that Harris County's system, which operated to have the same effect, violated the equal protection clause. See ODonnell, 2018 WL 851776, at *10. Furthermore, the Fifth Circuit has previously found that "[t]he incarceration of those who cannot [afford money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." Rainwater, 572 F.2d at 1057. Accordingly, Plaintiff has sufficiently stated a claim based on a violation of his equal protection rights and Defendants' Motion to Dismiss is **DENIED** as to this claim.

3. Due Process

A procedural due process claim requires a two-step analysis: "first a court must determine whether the plaintiff has a protected liberty or property interest and then the court must determine whether the state has provided adequate procedures for the vindication of that interest." Jordan v. Fisher, 823 F.3d 805, 810 (5th Cir. 2016), as revised (June 27, 2016) (citing Wilkinson v. Austin, 545 U.S. 209, 213, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005)). A liberty interest protected by the due process clause can arise from either the due process clause itself or from state law. ODonnell, 2018 WL 851776, at *6 (citing

Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)).

Plaintiff asserts the right to pretrial liberty and claims that Defendants violate this right by keeping an arrestee in jail simply because he cannot afford a particular monetary bail amount. Plaintiff further alleges that an arrestee is not provided with an individualized bail determination that takes into account his ability to pay and alternative non-financial conditions of release until a motion is heard before a judge of the 15th JDC, and this typically takes a week or more. He argues that both the Constitution and state law create a liberty interest in pretrial release that is not sufficiently protected by Defendants' policies and procedures.

In support of his contention that the Constitution creates such an interest, Plaintiff cites United States v. Salerno, 481 U.S. 739, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987), which involved a challenge to a provision of the Bail Reform Act of 1984 that allowed pretrial detention under certain circumstances. The Supreme Court ultimately rejected the challenge and found that the Act provided sufficient procedural safeguards, including a hearing with counsel at which the arrestee can present witnesses and proffer evidence, after which a judicial officer must find, by clear and convincing evidence, that no condition of pretrial release would reasonably assure the appearance of the arrestee and the safety of the community, and where such findings must be in writing. In making its decision, the Court was careful to clarify that it was not minimizing the "importance and fundamental nature" of the right to liberty. Salerno, 481 U.S. at 750. The Court concluded, "In our

society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception. We hold that the provisions for pretrial detention in the Bail Reform Act of 1984 fall within that carefully limited exception." Id. at 755.

As for a state-created liberty interest, this Court agrees with the Report and Recommendation that the Louisiana Constitution generally creates a right to bail on "sufficient surety." See La. Const. Art. 1, § 18. Louisiana Code of Criminal Procedure article 316 further provides that "[t]he amount of bail shall be fixed in an amount that will ensure the presence of the defendant, as required, and the safety of any other person and the community, having regard to," among other factors, "[t]he ability of the defendant to give bail."

Having found a liberty interest, whether pursuant to the Due Process Clause itself or through state law, it must then be determined whether the procedures in place are sufficient to protect the liberty interest. Here, Plaintiff claims that an individualized bail determination that considers an arrestees indigence does not occur until a motion is heard by a judge, and that this process typically takes a week or more. Because, prior to this hearing, an indigent arrestee is subject to a secured bail that he cannot afford, he is effectively under a pretrial order of detention and remains subject to that order without the procedural safeguards found sufficient in Salerno.[3] Here, as in ODonnell, Plaintiff challenges both (1) the delay before any judicial officer allows an arrestee the opportunity

---

[3]This Court is mindful of the Fifth Circuit's recognition that "when the accused is indigent, setting a secured bail will, in most cases, have the same effect as a detention order." ODonnell, 2018 WL 851776, at *6.

to raise inability to pay money bail, and (2) the refusal by judicial officers to consider non-financial conditions of release. See ODonnell v. Harris Cty., Texas, 227 F. Supp. 3d 706, 732 (S.D. Tex. 2016), aff'd in part, rev'd in part, No. 17-20333, 2018 WL 851776 (5th Cir. Feb. 14, 2018). In ODonnell, the Fifth Circuit upheld the district court's finding that due process requires an impartial decision-maker and a hearing at which the arrestee has an opportunity to be heard and present evidence. In modifying the requirements for what it characterized as the "procedural floor," the court further concluded that federal due process entitles detainees to a hearing within 48 hours. Based on these findings of the Fifth Circuit and Plaintiff's allegations, this Court finds that Plaintiff has sufficiently stated a claim based on a violation of due process. Accordingly, Defendants' Motion to Dismiss is **DENIED** as to Plaintiff's due process claim.[4]

## CONCLUSION

For the foregoing reasons, the Court adopts the Report and Recommendation of the Magistrate Judge [Record Document 58] only to the extent that it recommends that Defendants' motion be denied as to Plaintiff's due process claim against Commissioner Frederick. The Court **ORDERS** that Defendants' Motion to Dismiss [Record Document 26]

---

[4] While the Report and Recommendation distinguished Judge Earles from Commissioner Frederick in making a recommendation on Plaintiff's due process claim, based on Plaintiff's allegations, this Court does not find such defendant-specific analysis to be necessary. Nonetheless, the Court would make two observations: First, Defendants argued collectively for dismissal of Plaintiff's claims and did not make arguments distinct to either Commissioner Frederick or Judge Earles. Second, the Report and Recommendation recommended dismissing the due process claim against Judge Earles because it found that the 15th JDC Policy contained sufficient procedural safeguards, including an individualized bail determination within 72 hours. However, in ODonnell, the Fifth Circuit found that "the federal due process right entitles detainees to a hearing within 48 hours." ODonnell, 2018 WL 851776, at *8.

be **DENIED** in its entirety.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 8th day of March, 2018.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE