## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**EDWARD LITTLE**                    **CASE NO. 6:17-CV-00724**

**VERSUS**                            **JUDGE FOOTE**

**THOMAS FREDERICK ET AL**      **MAGISTRATE JUDGE HANNA**

## REPORT AND RECOMMENDATION

Currently pending is defendant Sheriff Mark Garber's Motion to Dismiss the First Supplemental Class Action Complaint and Re-urged Motion to Dismiss the Original Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). [Rec. Doc. 89]. The plaintiff filed memoranda in opposition [Rec. Docs. 94, 101, 106], to which Sheriff Garber replied [Rec. Docs. 95, 104]. The motion was referred to the undersigned for review, report, and recommendation, in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the undersigned recommends that the motion to dismiss be granted in part and denied in part.

## Procedural History

The undersigned previously issued a report and recommendation addressing Sheriff Garber's first motion to dismiss.[1] The district court adopted the

---

[1] *See* Rec. Doc. 59 (report and recommendation) addressing Rec. Doc. 18 (motion to dismiss).

recommendation insofar as it denied Sheriff Garber's motion to dismiss under Rule 12(b)(1); however, citing a then-pending motion for leave to file a supplemental complaint, the district court rejected the undersigned's recommendation that it grant Sheriff Garber's motion to dismiss under Rule 12(b)(6).[2] Given that granting the plaintiff leave to file a supplemental complaint would result in the district court considering additional allegations contained therein, Sheriff Garber's Rule 12(b)(6) motion to dismiss was denied, with the right to re-urge, after the district court ruled on the motion for leave to supplement the complaint. Over Sheriff Garber's opposition, the district court granted the motion; therefore, the facts below are based on the allegations contained in both the original and supplemental complaints.[3]

## **Background Facts**

In his original class action complaint, filed on June 5, 2017, plaintiff Edward Little alleges, on behalf of himself and all others similarly situated, that the Fifteenth Judicial District Court of Louisiana ("the 15th JDC"), through Commissioner Thomas Frederick, Chief Judge Kristian Earles, and Lafayette Parish Sheriff Mark Garber, utilizes a bail system that fails to consider an individual's financial condition

---

[2] *See* Rec. Doc. 79 (order adopting in part and rejecting in part this Court's earlier Report and Recommendation); Rec. Doc. 76 (plaintiff's motion for leave to file supplemental complaint).

[3] *See generally* Rec. Docs. 1 (original class action complaint), 59 (previously-issued report and recommendation), 82 (order granting motion to amend the complaint), and 83 (first supplemental class action complaint). Because the facts, as alleged in the original complaint, were fully recited in the previously issued report and recommendation, those facts have been somewhat condensed herein.

or ability to pay a bail amount, resulting in those who can pay being released and those who cannot pay being detained.[4] Plaintiff Little was arrested on June 3, 2017, two days prior to the commencement of this lawsuit, charged with felony theft, and detained at the Lafayette Parish Correctional Center ("LPCC"). Little's bail was set at $3,000, and he was allegedly unable to pay a bond agent $375 to secure his release.

According to the original complaint, the 15th JDC utilizes Judge Earles' money bail schedule, pursuant to which an arrestee's bail amount depends on the charged offense and the circumstances of the arrest. Generally, an arrestee's bail will initially be set based on Judge Earles' bail schedule; however, when a person is arrested for an offense not covered by the bail schedule, Commissioner Frederick sets bail, the circumstances of which depend upon whether the arrest was made pursuant to an arrest warrant. For arrests made pursuant to an arrest warrant, supported by probable cause affidavit, Commissioner Frederick sets bail when he signs the arrest warrant; for arrests made without a warrant, bail is set by Commissioner Frederick during a telephone call after he determines whether the arrest is supported by probable cause.

Pursuant to the original complaint, it is alleged that Sheriff Garber implements a policy at LPCC, whereby an arrestee is only released when his monetary bail amount is paid, whether the amount is set by the bail schedule or by Commissioner

---

[4] Louisiana's Fifteenth Judicial District consists of Lafayette, Vermillion and Acadia Parishes.

Frederick as a condition of release. Sheriff Garber's employees do not consider an arrestee's inability to pay a certain monetary bail amount.

If an arrestee is not released from LPCC, he will appear before Commissioner Frederick for an initial appearance, or "72-hour hearing," during which Commissioner Frederick will confirm that the arrestee's name, address, and date of birth are correctly listed on the arrest paperwork, advise the arrestee of the charges against him and his conditions of release, and appoint counsel if the arrestee is found to be indigent. Sheriff Garber's employees are allegedly present and aware that an arrestee's inability to pay a certain bail amount is not considered during the 72-hour hearing. Thereafter, an arrestee can only modify his bail amount by filing a motion to seek a bail reduction, which is heard by the assigned judge, if the arrestee has been formally charged by the district attorney, or by the duty judge if the arrestee has not been so charged. Therefore, the original complaint alleges that Sheriff Garber detains arrestees solely because they are unable to pay for their release.

Prior to issuing the report and recommendation on Sheriff Garber's original motion to dismiss, the undersigned held oral argument on October 19, 2017, at which time the parties agreed to submit for consideration with the motion, the 15th JDC's policy regarding bail bonds ("15th JDC Policy").[5] According to the 15th JDC Policy,

---

[5] Rec. Doc. 56-1 (15th JDC Policy); Rec. Doc. 57, pp. 14-15 (transcript of oral argument); Rec. Doc. 59, pp. 14-15 (report and recommendation).

all arrestees charged with a misdemeanor are released on a summons, without the requirement of posting bond, if charged with a traffic offense or one of the other thirty-eight misdemeanors listed therein. The 15th JDC Policy further provides that, by statute, an arrestee charged with domestic abuse battery will not be released on a summons, and an arrestee charged with driving under the influence may be released if the arrestee meets the qualifications for the Sheriff Offender Tracking Program ("STOP").[6] "[N]on-summons misdemeanors may also qualify for release on the signature (personal surety) of a qualified friend or family member who can establish residential stability and employment."[7]

The 15th JDC Policy further states that the bond for an arrestee charged with a felony "will be set *initially* based on the facts set forth in the probable cause for arrest affidavit, including arrestee's age, local vs no local address, circumstances of the offense, and the information on an arrestee's rap sheet including prior warrants for failure to appear."[8] Bonds are "set two to three times each day via phone or email."[9] However, if the arrestee does not bond out, is charged with a non-violent felony, and qualifies for STOP, he may be released without paying the set bail

---

[6] Rec. Doc. 56-1, p. 2. There is some discrepancy in the record as to whether the underlying program is called the "Sheriff Offender Tracking Program," (Rec. Doc. 56-1), or the "Sheriff's Tracking Offender Program, (Rec. Doc. 83, p. 2, ¶ 3). Regardless, there is no doubt that the parties are referring to one and the same program through the acronym "STOP."
[7] Rec. Doc. 56-1, p. 2.
[8] *Id.* (emphasis added).
[9] *Id.*

amount, pursuant to a court order that conditions his release upon satisfactory participation in the program. A felony arrestee may also be released on a signature (personal surety) bond. If an arrestee has not been released, he will be provided an individualized bail determination within 24 hours of arrest, if practical, but in no event later than the next available 72-hour hearing after his arrest.[10]

As stated, indigent defendants are assigned counsel at the 72-hour hearing. Thereafter, if bond has not been reduced, counsel may put the individual on a weekly bond reduction duty docket, at which time counsel for both parties will try to reach an agreement on a reduced bond amount. If no agreement is reached, the case is placed on the bond reduction docket of the assigned judge, who will hold a bond reduction hearing with evidence and argument.[11]

Through the supplemental complaint, the plaintiff describes the details of STOP.[12] The plaintiff alleges that, through the operation of STOP, Sheriff Garber determines the eligibility of both pretrial and sentenced detainees to participate in various diversion programs as alternatives to detention.[13] Some diversion programs entail release from the sheriff's custody; others allow detainees to participate while

---

[10] Rec. Doc. 56-1, p. 3.
[11] Rec. Doc. 56-1, p. 3.
[12] It is alleged that, on December 19, 2017, six months after this lawsuit commenced, Sheriff Garber revised his policies and procedures governing STOP. Rec. Doc. 83, p. 2, ¶ 4; *see also* Rec. Doc. 76, p. 2. It is unclear how those revisions differ from the policies and procedures that were in place in connection with the 15th JDC Policy, considered in the report and recommendation issued on the sheriff's original motion to dismiss, as discussed above.
[13] Rec. Doc. 83, pp. 1-2, ¶¶ 2-3.

incarcerated or in some other, less-restrictive environment within the sheriff's custody.[14]

In the supplemental complaint, the plaintiff alleges that pretrial detainees may apply for STOP through computer kiosks inside the jail; however, there is no written policy requiring that pretrial detainees be informed of, or instructed regarding, STOP when they are booked into the jail.[15] Using "various assessment forms," Sheriff Garber's staff interview and evaluate STOP applicants, decide which diversion programs are available to a particular detainee, and then submit a referral to a supervising sheriff's deputy for approval or denial.[16] Admission into those programs allowing release from jail require the approval of both a sheriff's deputy as well as a 15th JDC judge.[17] Eligibility requirements for diversion programs include, but are not limited to, the ability to pay program fees, such as those for drug screening, GPS or telephone monitoring, and substance abuse treatment.[18]

The supplemental complaint emphasizes that neither Commissioner Frederick nor any 15th JDC judge has the ability to place a detainee in a STOP diversion program without the referral and approval of Sheriff Garber.[19] Furthermore, if a supervising sheriff's deputy denies a detainee's STOP application,

---

[14] Rec. Doc. 83, p. 2, ¶ 7.
[15] Rec. Doc. 83, p. 2, ¶¶ 5-6.
[16] Rec. Doc. 83, p. 2, ¶ 8.
[17] Rec. Doc. 83, p. 3, ¶ 11.
[18] Rec. Doc. 83, pp. 2-3, ¶¶ 9-10.
[19] Rec. Doc. 83, p. 3, ¶¶ 12-13.

there is no mechanism by which the commissioner or any judge may review that decision.[20] The plaintiff alleges that Commissioner Frederick regularly delegates authority for pretrial release to Sheriff Garber, generally declining to release someone without money bond unless the sheriff approves the detainee for STOP.[21] Therefore, through STOP, Sheriff Garber "acts as a final policymaker" in the screening, selection and approval for release of pretrial detainees.[22]

Based on the allegations contained in the original and supplemental complaints, the plaintiff contends that the 15th JDC's bail procedure is a violation of his fundamental right to pretrial liberty, in violation of the Fourteenth Amendment's due process and equal protection clauses, because detention is based solely on an inability to pay the set bail amount, without inquiry into ability to pay or non-financial alternative conditions until a motion to reduce bail is filed. The plaintiff alleges that Sheriff Garber is a policymaker through his operation of STOP, by which he unconstitutionally detains people for their inability to pay a sum of money.[23] The plaintiff seeks the following relief on behalf of himself and all other class members:  (1) an injunction to enjoin the defendants from using money bail to detain any person without procedures that ensure an inquiry into and findings

---

[20] Rec. Doc. 83, p. 3, ¶ 13.
[21] Rec. Doc. 83, p. 4, ¶¶ 19-20.
[22] Rec. Doc. 83, p. 3, ¶ 14.
[23] The plaintiff explicitly states that the supplemental complaint neither alleges separate claims from those alleged in the original complaint nor does it allege that STOP itself is unconstitutional. Rec. Doc. 94, p. 4.

concerning the person's ability to pay any monetary amount set and non-financial alternative conditions of release; (2) a declaratory judgment that the defendants violate the plaintiffs' rights by setting secured financial conditions of release without inquiring into or making findings as to whether arrestees can pay the amounts set and without considering non-financial alternative conditions of release; and (3) an order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.[24]

## The Contentions of the Parties

In support of the instant motion to dismiss, Sheriff Garber seeks dismissal of the supplemental complaint, under Rule 12(b)(1), for lack of standing, because the plaintiff suffered no particularized injury arising from STOP. In the alternative, Sheriff Garber moves for dismissal of the supplemental complaint, under Rule 12(b)(6), because the plaintiff has no constitutional right to participate in STOP and has failed to allege that any sheriff's policy is the moving force for any alleged constitutional violations. Finally, Sheriff Garber re-urges his original motion to dismiss, on the basis of this Court's prior recommendation that the district court dismiss the original complaint under Rule 12(b)(6), for failure to establish that the sheriff's policies are the moving force behind any alleged constitutional violations.

---

[24] Rec. Docs. 1, 83.

The plaintiff asserts two bases for prospective relief against Sheriff Garber.[25] First, the plaintiff asserts that Sheriff Garber, through the operation of STOP, is a municipal policymaker, implementing an unconstitutional policy, through which he has discretion under state law to modify pretrial detainees' conditions of release.[26] The plaintiff argues that the facts now alleged, through the supplemental complaint, show that Sheriff Garber has a policy of detaining people due to their inability to pay money and that policy is the moving force behind the plaintiff's injuries, sufficient to establish liability under *Monell*.[27] Second, even if he simply enforces judicial orders over which he has no discretion, the plaintiff asserts that Sheriff Garber may be enjoined as a state actor committing constitutional violations.[28]

Sheriff Garber replies, *inter alia*, that the Fifth Circuit's decision in *ODonnell v. Harris County, Texas* ("*ODonnell I*"), "strongly supports the Sheriff's position in this matter[;] [n]o other authority which plaintiff cited is applicable to this matter."[29] *ODonnell I* arose out of a § 1983 class action suit against Harris County, Texas and a number of its officials, including the sheriff (collectively, "the County"), alleging that the County's system of setting bail for indigent *misdemeanor* arrestees violates, *inter alia*, the Fourteenth Amendment's equal protection and due process clauses.

---

[25] Rec. Doc. 94, pp. 4, 9.
[26] Rec. Doc. 94, p. 4.
[27] *Id*. at p. 5.
[28] *Id*.
[29] Rec. Doc. 95, p. 1 (citing *ODonnell v. Harris Cty., Texas*, 882 F.3d 528 (5th Cir.) (*ODonnell I*), *withdrawn*, 892 F.3d 147 (5th Cir. 2018) (*ODonnell II*)).

After a hearing, the district court granted the plaintiffs' motion for a preliminary injunction, finding that they were likely to succeed on their procedural due process and equal protection claims.[30] The County appealed, seeking vacatur of the injunction and raising numerous legal challenges, including the district court's finding that the sheriff was a municipal policymaker under § 1983 and *Monell*.[31] *ODonnell I* went beyond the requested relief and dismissed the sheriff from the case.

After the parties had fully briefed the instant motion, the Fifth Circuit granted a petition for panel rehearing and withdrew its earlier opinion, in favor of a substituted opinion, *ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018) ("*ODonnell II*"), prompting the plaintiff to file a "Notice of Supplemental Authority," to which he attaches *ODonnell II*.[32] In the petition for rehearing, the plaintiff-appellees challenged the sheriff's outright dismissal, given that the appeal merely challenged whether he was a county policymaker, not whether he may be enjoined under § 1983.[33] Thus, where *ODonnell I* dismissed the sheriff, *ODonnell II* concludes only that the sheriff "does not qualify as a municipal policymaker under § 1983."[34] Here, the plaintiff argues that *ODonnell II* establishes that he has, at least,

---

[30] *ODonnell II* explained that "[t]he fundamental source of constitutional deficiency in the due process and equal protection analyses is the same: the County's mechanical application of the secured bail schedule without regard for the individual arrestee's personal circumstances." 892 F.3d at 163.

[31] *ODonnell I*, 882 F.3d at 534; Rec. Doc. 101-1, pp. 2-3.

[32] Rec. Doc. 101.

[33] Rec. Doc. 104-1, p. 5.

[34] Rec. Doc. 101, p. 2; 101-1, p. 9; *see also ODonnell II*, 892 F.3d at 156.

stated a claim against Sheriff Garber in his capacity as a Louisiana state official if not also a municipal policymaker.[35]

Sheriff Garber responds by, first, explaining that *ODonnell II*'s cited limitation stems solely from the fact that the sheriff's status as a state official was simply not at issue on appeal.[36] The County's appeal sought vacatur of the preliminary injunction, pursuant to which the district court explicitly did "not order relief against the County Judges or Sheriff in their capacities as state actors[.]"[37] Thus, the Fifth Circuit had no cause to consider that issue on appeal. Second, Sheriff Garber emphasizes that *ODonnell II* does not disturb the Fifth Circuit's rationale, namely that "the Sheriff is legally obliged to execute all lawful process and cannot release prisoners committed to jail by a magistrate's warrant—even if prisoners are committed 'for want of bail.'"[38] Sheriff Garber argues that the same rationale would apply to any claims against the sheriff as an alleged state actor had they been at issue in the *ODonnell* appeal.

In reply, the plaintiff argues that *ODonnell II* is not limited to the preliminary injunction itself; rather, it should be read to affirm the district court's conclusion, in

---

[35] Rec. Doc. 101, pp. 1, 3.

[36] The district court in this case acknowledged this limitation and ordered further briefing prior to considering the undersigned's report and recommendation on Sheriff Garber's original motion to dismiss. *See* Rec. Doc. 71, p. 2 n. 1.

[37] *ODonnell v. Harris County, Texas*, 251 F.Supp.3d 1052, 1162 (S.D. Tex. Apr. 28, 2017) (Judge Rosenthal's order denying summary judgment and granting preliminary injunction).

[38] Rec. Doc. 104, p. 1 (quoting *ODonnell II*, 892 F.3d at 156).

its separate order denying the sheriff's motion to dismiss,[39] that the Harris County Sheriff may be enjoined in his capacity as a state actor.[40] The plaintiff points out that, in recommending appropriate modifications to the district court's injunction, the Fifth Circuit included the sheriff:

> The Harris County Sheriff is therefore authorized to decline to enforce orders requiring payment of prescheduled bail amounts as a condition of release for said defendants if the orders are not accompanied by a record showing that the required individual assessment was made and an opportunity for formal review was provided.[41]

Thus, the plaintiff contends that, in this case, Sheriff Garber may be enjoined in his capacity as a state actor.

## Law and Analysis

### A.    Rule 12(b)(1) Standard

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear

---

[39] *ODonnell v. Harris Cty., Texas*, 227 F. Supp. 3d 706, 752 (S.D. Tex. Dec. 16, 2016) (Judge Rosenthal's ruling on defendants' motion to dismiss).

[40] Rec. Doc. 106, p. 2 (citing *Magnolia Marine Transp. Co. v. Laplace Towing Corp.*, 964 F.2d 1571, 1580 (5th Cir. 1992)). The undersigned rejects this cite, as *Magnolia Marine* clearly involved *one* district court order, which granted an injunction *and* denied a motion to dismiss, such that "[t]he ground for denying the dismissal of the declaratory judgment suit, being precisely the same [as the grounds for injunction], must be likewise rejected in this decision." 964 F.2d at 1580. *Magnolia Marine* is clearly distinguishable from references to *ODonnell II* in this case. Here, not only does the plaintiff ask this Court to merge two *distinct* orders, but the only order at issue in the *ODonnell* appeal was the order granting the preliminary injunction, which *explicitly* did *not* order relief against the sheriff in his capacity as a state actor, such that the issue and underlying ruling thereon were clearly not at issue on appeal.

[41] Rec. Doc. 106, p. 2 (quoting *ODonnell II*, 892 F.3d at 165).

a case."[42] "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[43] This prevents a court without jurisdiction from prematurely dismissing a case with prejudice.[44]

"[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[45] "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[46] The plaintiff, as the party asserting jurisdiction, constantly bears the burden of proof that jurisdiction does in fact exist.[47]

## 1.    Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."[48] "In order to have standing to assert federal jurisdiction, a plaintiff 'must have suffered, or be threatened with, an actual injury

---

[42] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing Fed. R. Civ. P. 12(b)(1)).
[43] *Id.* (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).
[44] *Id.*
[45] *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).
[46] *Id.* (citing *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).
[47] *Id.*
[48] U.S. Const., Art. III, § 2.

traceable to the defendant and likely to be redressed by a favorable judicial decision.'"[49] Thus, "[t]o establish standing, a plaintiff must show: (1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury."[50] "To satisfy the injury-in-fact requirement, a plaintiff must allege an injury that is 'actual or imminent, not conjectural or hypothetical.'"[51] "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"[52]

Recognizing that the district court has already upheld the undersigned's finding that the plaintiffs' claims are not moot,[53] Sheriff Garber argues that "a plaintiff must demonstrate standing separately for each form of relief sought."[54] Sheriff Garber argues that the supplemental complaint fails to establish a particularized, "personal and individual" injury, arising from STOP. However, the

---

[49] *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 424 (5th Cir. 2013) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation marks and citation omitted)).

[50] *Hous. Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 617 (5th Cir. 2007); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[51] *Cruz v. Abbott*, 849 F.3d 594, 598 (5th Cir. 2017) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citation and internal quotation marks omitted)).

[52] *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016) (citations omitted).

[53] Rec. Doc. 59, pp. 6-9; Rec. Doc. 79.

[54] Rec. Doc. 95, p. 3 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 185 (2000); *see also Lewis v. Casey*, 518 U.S. 343, 358 n. 6 (1996) (because "standing is not dispensed in gross," a plaintiff who has been subject to one form of harm does not thereby have standing to litigate a similar injury to which he has not been subject)).

supplemental complaint merely seeks to legally implicate the sheriff in the same constitutional deprivation alleged in the original complaint, namely, the plaintiff's fundamental right to pretrial liberty grounded in the Fourteenth Amendment's due process and equal protection clauses. The plaintiff does not allege any independent property or liberty interest in a work-release program such as STOP. Thus, the supplemental complaint neither affects this Court's previously-issued mootness analysis, as adopted by the district court, nor undermines the plaintiff's standing in this case.[55]

## B.    Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is properly granted when a defendant attacks the complaint because it fails to state a legally cognizable claim.[56] When considering such a motion, a district court must limit itself to the contents of the pleadings, including any attachments thereto,[57] accept all well-pleaded facts as true, and view the facts in a light most favorable to the plaintiff.[58] However, conclusory allegations and

---

[55] *See* Rec. Doc. 59, pp. 6-9 (mootness analysis); and Rec. Doc. 79 (district court's order adopting the undersigned's recommendation to deny the sheriff's original motion to dismiss on the basis of Rule 12(b)(1)).

[56] *Ramming*, 281 F.3d at 161.

[57] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[58] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

unwarranted deductions of fact are not accepted as true,[59] and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[60]

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[61] The allegations must be sufficient "to raise a right to relief above the speculative level,"[62] and "the pleading must contain something more. . . than. . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."[63] "While a complaint. . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[64] If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[65]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the

---

[59] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *see also Collins*, 224 F.3d at 498.

[60] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[61] *Twombly*, 127 U.S. at 570.

[62] *Twombly*, 127 U.S. at 555.

[63] *Twombly*, 127 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

[64] *Twombly*, 127 U.S. at 555 (citations, quotation marks, and brackets omitted; emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[65] *Twombly*, 127 U.S. at 570.

defendant is liable for the misconduct alleged."[66] "[D]etermining whether a complaint states a plausible claim for relief. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[67] Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[68]

### 1.    Section 1983 Claim Against Sheriff Garber

Section 1983 does not create substantive rights;[69] it is a procedural rule that provides a private cause of action for redressing a violation of federal law. Therefore, an underlying constitutional or statutory violation is a predicate to any theory of liability under § 1983.[70]

In the instant motion, the sheriff argues that, even considering the additional allegations contained in the supplemental complaint, the plaintiff has still failed to establish that any sheriff's policy is the moving force behind Commissioner Frederick's bail determinations, even if his bail decisions are partly based upon the sheriff's STOP eligibility determinations. In response, the plaintiff argues that (a) the supplemental complaint establishes that the sheriff exercises policymaking

---

[66] *Iqbal*, 556 U.S. at 678.
[67] *Iqbal*, 556 U.S. at 679.
[68] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Twombly*, 127 U.S. at 556); *see also In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir. 2008).
[69] *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008).
[70] *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989).

authority and, therefore is a proper party for municipal liability purposes under *Monell*; and (b) even if *ODonnell II* precludes the sheriff's liability under *Monell*, he may still be enjoined as a state actor. Regardless of the theory, the alleged constitutional violation remains the same: the denial of pretrial liberty based solely on an inability to pay a set bail amount, without inquiry into ability to pay or alternative, non-financial conditions of release.[71]

At the outset, the sheriff argues that the supplemental complaint fails for failure to allege any constitutional right allegedly violated by STOP; however, the plaintiff concedes that he does not allege that STOP itself is unconstitutional or that the plaintiff has a constitutional right to participate in STOP. Indeed, the Fifth Circuit has confirmed that "no federal or state law creates a right to participate in a work release program."[72] Furthermore, this Court has applied that precedent to the Lafayette Parish Sheriff's STOP policy to find that a plaintiff "is not constitutionally entitled to participate in the STOP program[.]"[73]

---

[71] "[A] complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848–49 (8th Cir. 2014) (citation omitted). As will be explained herein, the plaintiff's allegations do not provide relief on any possible theory, as no sheriff's policy is the moving force behind the alleged constitutional deprivation.

[72] *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994).

[73] *Dickerson v. Reardon*, No. 11-CV-1628, 2012 WL 5335952, at *4-5 (W.D. La. Oct. 3, 2012) (Hanna, M.J.), *rep't and rec. adopted*, No. 11-CV-1628, 2012 WL 5334767 (W.D. La. Oct. 25, 2012) (Doherty, J.).

Given that the plaintiff does not have a constitutional right to participate in STOP, the following allegations do not support an actionable claim: "[t]he Sheriff operates STOP, which determines a detainee's eligibility for [certain diversion] programs[;]"[74] "[p]retrial detainees cannot enter any of the [STOP] diversion programs without the approval of the Sheriff's staff[;]"[75] "[e]ligibility requirements for diversion programs include, but are not limited to, the ability to pay program fees[;]"[76] "[a] judge of the 15th [JDC] cannot place a pretrial detainee in a [STOP] diversion program without the referral and approval of the Sheriff[;]"[77] and "[i]f the [sheriff] denies a pretrial detainee's application for admission to a diversion program, there is no mechanism by which Commissioner Frederick, or any other judge of the 15th [JDC], can review that decision."[78] Further, the plaintiff's allegation that "Commissioner Frederick generally will not release someone without money bond unless the Sheriff approves the pretrial detainee for a [STOP] diversion

---

[74] Rec. Doc. 83, pp. 1-2, ¶¶ 2-3.

[75] *Id.* at p. 2, ¶ 8.

[76] *Id.* at p. 2, ¶ 9. By emphasizing that program fees may be required to participate in STOP, the plaintiff implies that the alleged constitutional deprivation may be expanded to reach *any* sum of money, rather than just a set bail amount, required to be paid by a detainee. However, the sheriff points out that the alleged constitutional right at issue is the "fundamental right to pretrial liberty by placing and keeping [plaintiff] in jail because he cannot afford to pay the **monetary bail amount**. . ." Rec. Doc. 89-1, p. 6 (quoting Rec. Doc. 1, p. 16, ¶ 64 (emphasis added)). The mere fact that STOP eligibility—to which the plaintiff is not constitutionally entitled—depends, in part, on a detainee's ability to pay program fees does not render that requirement violative of any constitutional rights. *See* La. R.S.15:711(C) ("Every inmate with work release privileges *shall* be liable for the cost[s] . . .") (emphasis added).

[77] *Id.* at p. 3, ¶ 12.

[78] *Id.* at p. 3, ¶ 13.

program[,]"[79] fails to state a claim against *the sheriff*.[80] Even assuming that Commissioner Frederick improperly relies upon the sheriff's STOP determinations, such an allegation implicates the commissioner and the 15th JDC's bail policy, not the sheriff and STOP. Because there is no constitutional right to participate in STOP, the plaintiff argues instead that the sheriff somehow uses STOP to set bail policy. For the reasons explained below, neither the record nor state law supports such an argument.

As noted in the prior report and recommendation, Sheriff Garber is named only in his official capacity as the sheriff of Lafayette Parish.[81] The Fifth Circuit has recognized that "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."[82] Thus, the plaintiff's official-capacity claims against Sheriff Garber are actually claims against the Lafayette Parish Sheriff's Office itself, which are claims against a municipality.[83] Because it remains true, the undersigned repeats: "Although the plaintiff argues that *Monell* does not apply when the sheriff enforces a judicial order over which he has no discretion, there is no claim in the plaintiff's complaint separate and apart from

---

[79] Rec. Doc. 83, p. 4, ¶ 19.
[80] As explained below, the sheriff is statutorily authorized to establish and administer STOP; he is not legally authorized to fix bail. *See* La. R.S. 15:711; La. Code Crim. Proc. art. 314(A)(1).
[81] Rec. Doc. 59, p. 17.
[82] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).
[83] *See* Rec. Doc. 59, p. 17 (citing *Cain v. City of New Orleans*, No. 15-4479, 2016 WL 2849498, at *6 (E.D. La. May 13, 2016) (Vance, J.) (recognizing that a Louisiana sheriff was a municipal actor and subject to *Monell*'s standard of liability).

the claim against the sheriff in his official capacity and, therefore, as a municipality. Thus, *Monell* applies to the plaintiff's claims."[84]

"To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[85] For purposes of the instant motion, STOP constitutes official policy promulgated by Sheriff Garber, as a municipal policymaker.[86] However, in establishing *Monell* liability*,* "whether an official ha[s] final policymaking authority is a question of state law."[87] In Louisiana, Article 314 of the Louisiana Code of Criminal Procedure specifically vests authority to fix bail in "[d]istrict courts and their commissioners having criminal jurisdiction, in all cases."[88] Louisiana law does not authorize a sheriff to fix bail in any case at all.[89] Thus, while the sheriff has final policymaking authority regarding STOP, pursuant to La. R.S. 15:711, it remains true that he lacks any legal authority to set bail.

Instead, as explained in the prior report and recommendation, Article 315 specifically authorizes a bail schedule, such as that created by Judge Earles and

---

[84] Rec. Doc. 59, pp. 17-18.
[85] *Trammell v. Fruge*, 868 F.3d 332, 344 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)).
[86] *See* Rec. Doc. 83, pp. 1-2, ¶¶ 2-4, 8, and 11-12.
[87] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *ODonnell II*, 892 F.3d at 155.
[88] La. Code Crim. Proc. art. 314(A)(1).
[89] Rec. Doc. 59, pp. 18-19.

employed by the 15th JDC in this case.[90] Paragraph B of that article states, in pertinent part:

> The court order setting the bail schedule shall fix the amount of bail for each offense listed, designate the officer or officers authorized to accept the bail, and order that bail be taken in conformity with the schedule. . . . A copy of the schedule shall be sent to all jails, sheriff's offices, and police stations within the judicial district, parish, or city.[91]

Whether a particular arrestee's bail is set pursuant to the schedule or on an individualized basis in accordance with the 15th JDC Policy, the sheriff is obliged to follow that court order under Article 328, which describes the requirements of a particular bail undertaking and states that "[t]he bail undertaking **shall** be enforceable" if the stated requirements are met.[92]

Given these statements of the law, this Court previously found:

> The plaintiff does not allege that Sheriff Garber has the authority to release an arrestee when his bail obligations are not satisfied. Nor does the plaintiff allege that Sheriff Garber has the authority to set or modify bail. Under Louisiana law, a sheriff is the keeper of the jail in his parish and shall "preserve the peace and apprehend public offenders."[93] Sheriff Garber, as the keeper of the jail, enforces the monetary bail amounts that are set by court orders. Under state law, Sheriff Garber has no authority to modify or decline to enforce court orders as the plaintiff would have this Court authorize. Therefore, Sheriff Garber's policy is not the moving force for the plaintiff's alleged constitutional violations.[94]

---

[90] *Id*. at p. 19 (citing La. Code Crim. Proc. art. 315).
[91] *Id*. at p. 19 (citing La. Code Crim. Proc. art. 315(B)).
[92] *Id*. at p. 19 (citing La. Code Crim. Proc. art. 328(A) and (B)); *see also* La. Code Crim. Proc. art. 314.
[93] Rec. Doc. 59, p. 20 (quoting La. R.S. 13:5539).
[94] *Id*. at p. 20.

This Court finds that this remains the state of the law, and nothing in the supplemental complaint cures the cited deficiencies.

Again, *Monell*'s third element requires that STOP, as the only relevant policy promulgated by the sheriff, be the moving force behind the alleged constitutional violation, *i.e.* the denial of pretrial liberty based solely on inability to pay a set bail amount, without inquiry into ability to pay or alternative non-financial conditions of release. To establish that a policy is the moving force behind the violation, the plaintiff "must show direct causation."[95] "'[T]here must be a direct causal link' between the policy and the violation."[96] Thus, there must be a direct causal link between STOP, which is a work release program, and the denial of pretrial liberty based solely on an inability to pay a set bail amount, without inquiry into ability to pay or alternative non-financial conditions of release.

As explained by the sheriff, bail and work-release programs are entirely separate legal concepts arising from different authorities. The right to bail in Louisiana is set forth in the Louisiana Constitution, article 1, section 18; federal courts have found a fundamental right to reasonable access to the bail system, and both the state and federal constitution explicitly provide that "[e]xcessive bail shall

---

[95] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009) (citing *Piotrowski*, 237 F.3d at 580).
[96] *Id.*

not be required."[97] On the other hand, work release programs, such as STOP, to which there is no constitutional right, derive from Louisiana Revised Statute 15:711, pursuant to which the sheriff of each parish is "authorized to establish and administer" such programs and "determine those inmates who may participate" therein. Furthermore, bail and work release programs serve different purposes. "Bail is the security given by a person to assure a defendant's appearance before the proper court whenever required[;]"[98] work release programs and related privileges are generally "designed to improve the skills and abilities of the inmate."[99]

The plaintiff argues that it is the Sheriff who "decides whether someone may be released from his jail[,]" because "[h]is approval, pursuant to his policy, is necessary (albeit insufficient) for anyone to be released who is detained because she cannot pay money bail."[100] The plaintiff also states that the sheriff "has a policy of recommending that certain detainees be released; all other detainees remain in jail."[101] Yet, in the supplemental complaint, the plaintiff concedes that "[a]dmission

---

[97] *Broussard v. Parish of Orleans*, 318 F.3d 644 (5th Cir. 2003) (citing *Schilb v. Kuebel*, 404 U.S. 357 (1971) and *Bell v. Wolfish*, 441 U.S. 520 (1979)); *see also Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc) (concluding that "[t]he incarceration of those who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements."); La. Const. Ann. art. I, § 18; U.S. Const. amend. VIII. For purposes of the instant motion, it is sufficient to delineate the differences between bail and work release, as the merits of the case—and whether the plaintiff can prevail on his due process and/or equal protection claims—will be determined at a later time.
[98] La. Code Crim. Proc. art. 311(1).
[99] La. R.S. 15:711(B).
[100] Rec. Doc. 94, p. 10.
[101] Rec. Doc. 94, p. 12.

to those diversion programs that allow for a pretrial detainee's release from jail . . .
must be approved by *both* the supervising Sheriff's deputy and a judge of the 15th
[JDC.]"[102] Thus, the plaintiff *still* has not alleged that Sheriff Garber has the
authority to release an arrestee when his bail obligations are not satisfied nor that he
has the authority to set or modify bail. It remains true that Sheriff Garber, as the
keeper of the jail, enforces the monetary bail amounts that are set by court orders,
and he has no authority, under Louisiana law, to modify or decline to enforce court
orders.[103] Having reviewed the plaintiff's supplemental allegations, the undersigned
finds that the plaintiff has failed to cure the original complaint's infirmities;
therefore, the plaintiff has failed to state a claim against the sheriff under *Monell*.

Alternatively, the plaintiff argues that, even if he has failed to state a claim
against the sheriff under *Monell*, the sheriff may still be enjoined as a state actor, for
doing "no more than execut[ing] unconstitutional judicial orders that he is required
to follow under state law."[104] For this argument to succeed, this Court would have

---

[102] Rec. Doc. 83, p. 3, ¶ 11 (emphasis added).
[103] *See* La. Const. art. 5, § 27 ("In each parish a sheriff shall be elected[,] . . . and [he] shall
execute court orders and process."); La. R.S. 13:5539(B) ("Each sheriff . . . shall execute all
writs, orders, and process of the court or judge thereof directed to him."). On this basis, the
undersigned also rejects the following argument made by the plaintiff: "The fact that [the sheriff]
may not alone decide whether someone may be released is of no moment; once someone is in jail
pursuant to an unconstitutional order of detention, the Sheriff can decide that he will remain
there." Rec. Doc. 94, pp. 12-13.
[104] Rec. Doc. 94, p. 13.

to bypass the elements required to establish *Monell* liability.[105] This argument is foreclosed by the Supreme Court's holding in *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 39 (2010), "that *Monell*'s 'policy or custom' requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective."[106] Indeed, as the Fifth Circuit reiterated in *ODonnell II*, "[l]iability under § 1983 attaches to local government officers 'whose [unlawful] decisions represent the official policy of the local governmental unit.'"[107] And, in addressing the merits of *ODonnell II*, the Fifth Circuit repeatedly analyzed the County's "bail system," "bail-setting procedures," and "custom and practice," underscoring the threshold requirement and finding that § 1983 liability attaches only to unlawful decisions that represent official policy.[108]

The undersigned rejects the argument, as did the Supreme Court in *Humphries*, "that applying *Monell*'s requirement to prospective relief claims will leave some set of ongoing constitutional violations beyond redress."[109] To the extent

---

[105] *See, e.g.,* Rec. Doc. 94, p. 14 ("The Sheriff's motion should therefore be denied regardless of whether the Court concludes that the Sheriff may be enjoined under *Monell*.").

[106] *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 39 (2010); *see id.* at 37 ("To find the ['policy or custom'] requirement inapplicable where prospective relief is at issue would undermine *Monell*'s logic. For whether an action or omission is a municipality's 'own' has to do with the nature of the action or omission, not with the nature of the relief that is later sought in court."); *see also Cain*, 2016 WL 2849498, at *6.

[107] *ODonnell II*, 892 F.3d at 155 (quoting *Jett v. Dall. Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989)).

[108] *ODonnell II*, 892 F.3d 147 *passim*.

[109] *Humphries*, 562 U.S. at 38.

the 15th JDC's bail system results in the constitutional deprivations alleged in this case, it is not the sheriff's policies which act as the moving force, such that his dismissal does not leave any alleged violations beyond redress.

*ODonnell II* does not change, and in fact supports, this Court's analysis herein. As explained, *ODonnell II* arose out of the County's appeal of the district court's ruling, which both granted the plaintiffs' motion for preliminary injunction and denied the County's motion for summary judgment.[110] On the merits of the constitutional claims, *ODonnell II* affirmed the district court's rulings that Harris County's bail system violates both due process and equal protection. In doing so, the Fifth Circuit specifically identified "the constitutional defect in the process afforded [as] the *automatic* imposition of pretrial detention on indigent misdemeanor arrestees[.]"[111] The applicability of *ODonnell II* to the underlying facts and merits of this case will ultimately depend upon the district court's assessment of the 15th JDC's bail policy, in light of Louisiana and federal law.[112]

---

[110] As noted in footnote 40, *supra*, the appeal did *not* involve the district court's separate order denying the Harris County defendants' motion to dismiss, upon which the plaintiff herein seeks to rely. Furthermore, the ruling that *was* at issue included an explicit, limiting acknowledgment that the district court was "not order[ing] relief against the County Judges or Sheriff in their capacities as state actors[.]" *See* footnote 37, *supra*, citing *ODonnell v. Harris County, Texas*, 251 F.Supp.3d 1052, 1162 (S.D. Tex. Apr. 28, 2017) (Judge Rosenthal's order denying summary judgment and granting preliminary injunction).

[111] *ODonnell II*, 892 F.3d at 160 (emphasis in original).

[112] The undersigned notes that *ODonnell II*'s applicability may also ultimately be affected by the "plenary resolution of [the ODonnell] appeal by a merits panel[,]" as recently noted in the Fifth Circuit's grant of the Harris County Judges' motion for a partial stay of the district court's revised preliminary injunction, issued after the parties supplemented their briefing herein. *See ODonnell v. Goodhart*, ___ F.3d ___, 2018 WL 3853454, at * 2 (5th Cir. 2018). In this most

However, for purposes of ruling on the instant motion, *ODonnell II* supports dismissal of the sheriff. Before addressing the underlying constitutional claims, the Fifth Circuit first acknowledged that "[t]he County raises a number of arguments that do not implicate the merits," including whether the Harris County Sheriff is an appropriate party for attaching municipal liability.[113] In contrast to the Harris County Judges, *ODonnell II* found that the sheriff "does not have the same policymaking authority[,]" because he "is legally obliged to execute all lawful process and cannot release prisoners committed to jail by a magistrate's warrant—even if prisoners are committed 'for want of bail.'"[114] In Louisiana, both constitutional and statutory authority directs that each parish's sheriff *shall* execute court orders and process.[115] The mandatory nature of a Louisiana sheriff's duty to execute court orders has long been recognized by Louisiana jurisprudence, as well.[116] Thus, as was the case in

recent *ODonnell* ruling, the Fifth Circuit found that certain sections of the revised injunction repeated the mistake of the first, in that the injunction was overbroad and "amount[ed] to the outright elimination of secured bail for indigent misdemeanor arrestees[,]" despite there being "no such . . . fundamental substantive due process right to be free from any form of wealth-based detention." *Id.* at * 7.

[113] *ODonnell II*, 892 F.3d at 155.

[114] *Id.* at 156 (citing Tex. Code Crim. Pro. arts. 2.13, 2.16, 2.18; Tex. Loc. Gov't Code § 351.041(a) (noting the Sheriff's authority is "subject to an order of the proper court")).

[115] La. Const. art. 5, § 27 ("In each parish a sheriff shall be elected[,] . . . and [he] shall execute court orders and process."); La. R.S. 13:5539(B) ("Each sheriff . . . shall execute all writs, orders, and process of the court or judge thereof directed to him.").

[116] *See* Rec. Doc. 95, pp. 6-7 (citing, *e.g. Wong v. E. Baton Rouge Par. Sheriff's Office*, 522 So. 2d 1134, 1141 (La. Ct. App. 1988) ("Because a sheriff's duty to execute court orders is constitutionally and statutorily imposed with the word 'shall', that duty is mandatory."); *Crow v. Manning,* 45 La. Ann. 1221, 14 So. 122 (1893); *Citadel Sec., Inc. v. Blue D Corp.*, 467 So. 2d 118, 120 (La. Ct. App. 1985)).

*ODonnell II* and as previously discussed herein, Louisiana state law does "not authorize [Sheriff Garber] to avoid executing judicial orders imposing secured [or unsecured] bail by unilaterally declaring them unconstitutional."[117] It therefore follows, too, that Sheriff Garber "does not qualify as a municipal policymaker under § 1983" and must be dismissed.[118]

## Conclusion

Based on the foregoing reasons, it is recommended that Sheriff Garber's motion to dismiss [Rec. Doc. 89] should be granted in part and denied in part. The motion should be denied to the extent that Sheriff Garber seeks dismissal pursuant to Rule 12(b)(1); the motion should be granted to the extent that Sheriff Garber seeks dismissal pursuant to Rule 12(b)(6).

It is further recommended that Sheriff Garber's re-urged motion to dismiss [Rec. Doc. 18], pursuant to Rule 12(b)(6), should be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

---

[117] *ODonnell II*, 892 F.3d at 156. This finding applies with even more force to a Louisiana sheriff, given that "Texas law provides a significant role for sheriffs in setting and taking bail in misdemeanor cases[,] at the heart of the *ODonnell* case. *ODonnell v. Harris Cty., Texas*, 251 F. Supp. 3d 1052, 1164 (S.D. Tex. 2017) (Judge Rosenthal's order denying summary judgment and granting preliminary injunction).
[118] *Id.*

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[119]

Signed at Lafayette, Louisiana, this 28th day of August 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[119] *See Douglas v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).